241 N.J. Super. 12 (1990)
574 A.2d 54
ARLENE S. SIEGEL, PLAINTIFF,
v.
RICHARD L. SIEGEL, DEFENDANT.
Superior Court of New Jersey, Chancery Division Family Part, Middlesex County.
Decided January 22, 1990.
*13 Martin S. Goldin, for plaintiff.
Jacqueline M. Printz, for defendant.
BERMAN, J.S.C.
A question of res nova confronts this court: do casino gambling losses ($227,850) incurred pre-complaint, but when the marriage was irreparably fractured, fall within the matrimonial "pot" as a credit to distributable assets, or does it equate with a "dissipation" of funds to be borne solely by the one who placed the family treasury at risk?
This court-one of equity-elects to chart the latter course: the debt belongs to the gambler, without offset or credit; and this court shall hereafter elaborate on the equities, generally, and the facts of this case, specifically, which require this result.
Given the absence of similar authority in this jurisdiction, this court's attention is drawn to the Texas case of Reaney vs. Reaney, 505 S.W.2d 338 (Tex. Ct. App. 1974). There, the allegations centered on a spouse "squandering" $53,000, all or part of it, gambling in Puerto Rico. The Texas Court of Appeals appropriately opined that the "admitted dissipation ... was presumptively fraudulent." Id. at 340.
An Illinois appellate court reached a similar result when a litigant "withdrew a substantial portion of the joint account" and then used it "for a purpose unrelated to the marriage, at a time that the marriage was under going an irreconcilable breakdown." Klingberg v. Klingberg, 68 Ill. App.3d 513, 25 Ill.Dec. 246, 250, 386 N.E.2d 517, 521 (1979).
In dividing marital property the New Jersey Supreme Court has also stated:
Financial dishonesty or financial unfairness between the spouses, or overreaching also can be material. [Mahoney vs. Mahoney, 91 N.J. 488, 502, 453 A.2d 527 (1982)]
*14 And finally, this court finds some measure of guidance in the statutorily (N.J.S.A. 2A:34-23.1) mandated factors of equitable distribution, specifically paragraph "i" which provides:
The contribution of each party to the acquisition, dissipation, preservation, depreciation, or appreciation in the amount or value of the marital property.... [Emphasis supplied]
In view of the foregoing, all equities compel the result set forth hereinabove, removing from judicial consideration an area of "liability" too ripe for potential mischief. And as set forth hereinbelow, the specific facts of this case dictate the inexorability of this conclusion.
Defendant's gambling "indebtedness" is evidenced by a note from him to a closely-held corporation of which he is an equal one-third shareholder. Of consuming curiosity are the following facts:
a. all alleged losses were sustained when the marriage had already deteriorated to a terminal level, and some of those losses would have occurred when the parties were actually separated;
b. the note was executed July 23, 1987  ten days after the complaint for divorce was filed, purportedly for "losses" which had already been sustained;
c. the note, payable on "demand" has never been "called," and in the defendant's best case scenario, one-third is virtually payable to himself;
d. on September 1, 1989 this court denied defendant's application to compel plaintiff to execute a joint income tax return for the 1988 calendar year. Defendant, with full knowledge of that ruling, then forged plaintiff's signature to the return.
While this court fully respects defendant's right to arrange his finances to minimize his tax liability, forging his wife's signature to gain that end patently crossed the line between legitimate tax avoidance and illegitimate tax evasion. In the process he manifested inexcusable contempt for this court, and bankrupted his own credibility, aside from the discursive explanation *15 at trial elevating incredulity to an art form. This court is constrained to further add that its orders, constructed solely of pen to paper, possess only as much vitality as either the willingness of litigants to adhere to them, or this court's willingness to take appropriate measures if they don't. Anything less perpetuates an unfortunate myth that the Family Court is oftentimes too impotent or too timid to deal decisively and firmly with litigants who pervert the judicial process with impunity.
In conclusion, requiring defendant to fully assume the gambling indebtedness not only places the parties where they belong, but also where they positioned themselves, especially since this court is unconvinced of the actuality of the alleged losses, or plaintiff's knowledge of them assuming its occurrence.
Counsel for plaintiff shall submit the appropriate order.