255 N.J. Super. 500 (1992)
605 A.2d 750
DIPTI KOTHARI, PLAINTIFF-RESPONDENT,
v.
AJAY KOTHARI, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 3, 1992.
Decided April 15, 1992.
*503 Before Judges ANTELL, BAIME and THOMAS.
James J. Armstrong, Jr., argued the cause for appellant.
Edward B. Meredith argued the cause for respondent (Meredith, Meredith & Chase, attorneys; Regina H. Meredith, on the brief).
The opinion of the court was delivered by ANTELL, P.J.A.D.
In this matrimonial action, defendant (former husband) appeals from portions of a divorce judgment entered on August 9, 1990, determining that certain monies paid during the marriage by defendant to his parents and other monies spent on his own personal requirements to be includable within the marital estate. The judgment also orders payment of 50% thereof to plaintiff (former wife) as her partial share of equitable distribution. Although not clearly stated, the trial court seems to have found that these monies were "dissipated" within the meaning of N.J.S.A. 2A:34-23.1i, and the significant question presented on this appeal is whether that conclusion is supported by the evidence and the trial court's findings.
Also challenged by defendant are the trial court's calculations in arriving at its award of equitable distribution, alimony and child support. He further complains that the court erred in ordering that the child of the marriage be designated as the *504 sole beneficiary of defendant's life insurance policies and in awarding counsel fees in favor of plaintiff.
The parties were married in Baroda, Gujarat, India, in a religious ceremony on April 30, 1981. Plaintiff was then a United States citizen, and after the marriage ceremony both parties took up residence together in New Jersey. Defendant had become a medical doctor in India in February 1979 and when he arrived in this country on September 2, 1981, he devoted his time in preparation for his licensing examinations. The couple lived off plaintiff's earnings and resided rent-free successively with plaintiff's parents in Trenton, plaintiff's sister, and then with a friend and former schoolmate of defendant, Dr. Harish Patel. One child was born of the marriage on May 27, 1985.
The parties agree that the marriage was beset with strife from the beginning. Before plaintiff brought this divorce action in New Jersey on August 7, 1989, defendant had instituted divorce proceedings in Cook County, Illinois on August 5, 1985, in Butler County, Ohio in October 1987, and in the District of Narol, Ahmedabad, India in July 1988, none of which proceeded to a conclusion.
One of the principal impediments to the success of the marriage was defendant's inability to abide the cultural differences between American and Indian society. Another was defendant's regular acquiescence in the demands of his parents that he supply them with money in accordance with Indian custom.
Among the acts of extreme cruelty alleged in the second count of her complaint, plaintiff specified that "[d]efendant sent outrageous amounts of money to his family" and "has not financially supported Plaintiff or their child." Defendant conceded giving money to his parents, but claimed these were funds that "he was bound to return to ... [his] parents for monies advanced to him in pursuit of his education and other expenses till he landed in USA [in 1981]." On July 12, 1990, the *505 trial court rendered an oral decision, finding that plaintiff's grounds of desertion and extreme cruelty had been proved, and on August 9, 1990, it signed a divorce judgment.
The court found that, as of August 7, 1989, the date plaintiff filed her complaint, the parties' marriage had accumulated essentially "nothing." It noted, though, that between the date of the marriage on April 30, 1981, and the filing of the divorce complaint on August 7, 1989, through defendant's manipulation the funds that the parties had acquired during the marriage "went somewhere," and concluded that plaintiff was entitled to enjoy a 50% interest in those assets.
First, the court found defendant had sent $30,000 to his parents while they resided in India between October 1981 and September 1987. Defendant testified that he had sent this money to his parents to satisfy his moral obligation to repay the money he received from them to finance his medical education and initial passage to America. The court determined, however, that there was "no basis to find that a debt was owed." It also observed that, while plaintiff "knew that monies were being sent," it was also "clear that she was objecting to the fact that these monies were being sent." Thus, as to that $30,000, the court declared them to be "marital assets that were sent without the real consent of ... [plaintiff], or the recognition of them as a [debt] repayment." Half of that sum, or $15,000, was therefore ordered distributed to plaintiff.
Second, the court found that, just before defendant returned with his parents to India in March 1988, he established a $19,000 fund by liquidating marital assets, acquired through the efforts of both parties, then in his possession and took that fund with him to India. The court found that defendant used the money "for some living expenses [in India] to establish a practice again" and in December 1988, after buying airplane tickets for himself and his parents, defendant "returned to the United States with $11,000" that defendant "ended up spending for his own purposes." The court also noted that "during this *506 time period [September 1987 to March 1988]" defendant was "planning and thinking of divorce." Accordingly, this money too was held to constitute marital funds of which plaintiff was awarded a one-half share in the amount of $9,500.
Third, the court concluded that defendant had expended the sum of $58,624 for the support of his parents during the 32-month period they lived with defendant after his return to the United States from India. As to these monies, the court awarded a 50% share to plaintiff in the amount of $29,312.
N.J.S.A. 2A:34-23.1i requires the court, in making an equitable distribution of marital property, to consider the "contribution of each party to the acquisition, dissipation, preservation, depreciation or appreciation in the amount or value of the marital property." (Emphasis added). The Legislature did not define "dissipation" of marital property. It is clear, however, that the concept is a plastic one, suited to fit the demands of the individual case. As the court stated in Head v. Head, 168 Ill. App.3d 697, 119 Ill.Dec. 549, 552-53, 523 N.E.2d 17, 20-21 (1 Dist. 1988), with respect to a similar statute:
Dissipation may be found where a spouse uses marital property for his or her own benefit and for a purpose unrelated to the marriage at a time when the marriage relationship was in serious jeopardy.
Whether a given course of conduct constitutes dissipation within the meaning of the Act depends upon the facts and circumstances of the particular case. Upon review, the trial court's determination regarding the dissipation of assets lies within the sole discretion of the trial court and will not be reversed absent an abuse of discretion. (citations omitted).
As aptly noted in Annotation, Spouse's Dissipation Of Marital Assets Prior To The Divorce As A Factor In Divorce Court's Determination Of Property Division, 41 A.L.R. 4th 416, 419, n. 1 (1985), the term "dissipation" in a divorce context is "not susceptible to a precise definition."
When one party to a divorce proceeding spends marital funds extravagantly, or merely for his or her own benefit, that obviously diminishes the amount of property which is available for distribution by the divorce court. On the other hand, until such time as the parties are contemplating a divorce, they are generally vested with the authority to spend marital funds for their own enjoyment, such as movies, dinners, vacations, and the like. The question of *507 dissipation of marital assets thus involves an attempt to accommodate these two conflicting interests in the marital estate. [Id. at 420].
While the courts that have considered this question have "uniformly held that one spouse's actual dissipation of marital property is an appropriate factor for the court to consider when dividing the marital estate," uniformity deteriorates when those courts addressed the "more complicated" issue of whether the purpose of the expenditure "amounts to dissipation under the circumstances." Id. at 420-21.
In resolving this issue, courts have considered a variety of factors, including, "most commonly," the following:
(1) the proximity of the expenditure to the parties' separation, (2) whether the expenditure was typical of expenditures made by the parties prior to the breakdown of the marriage, (3) whether the expenditure benefitted the "joint" marital enterprise or was for the benefit of one spouse to the exclusion of the other, and (4) the need for, and amount of, the expenditure. [Id. at 421].
The question ultimately to be answered by a weighing of these considerations is whether the assets were expended by one spouse with the intent of diminishing the other spouse's share of the marital estate. Robinette v. Robinette, 736 S.W.2d 351, 354 (Ky. Ct. App. 1987); Bollenbach v. Bollenbach, 285 Minn. 418, 175 N.W.2d 148, 155 (1970). We leave for future cases the question of whether the dissipation concept also includes expenditures of marital assets, even where the parties are not considering separation, where the expenditures are made for purposes inimical to the marriage and in association with some form of matrimonial misconduct.
The analytical format suggested above is soundly reasoned and not incompatible with New Jersey precedents in comparable cases. See Goldman v. Goldman, 248 N.J. Super. 10, 589 A.2d 1358 (Ch.Div. 1991); Siegel v. Siegel, 241 N.J. Super. 12, 574 A.2d 54 (Ch.Div. 1990); Baskinger v. Baskinger, 129 N.J. Eq. 224, 18 A.2d 845 (Ch. 1941).
In Goldman v. Goldman, plaintiff husband had advanced $400,000 of marital funds to his car dealership. The money was lost when the dealership eventually failed and defendant wife *508 alleged dissipation for purposes of equitable distribution. The court rejected that contention on the findings that plaintiff had invested the funds as part of a good faith effort to preserve a marital asset for himself and his wife and there was no allegation that he used the money to discharge his pendente lite obligations. As the court there said, "If plaintiff had depleted marital assets to discharge his obligations, he would have been charged with the amount of the depletion." 248 N.J. Super. at 18, 589 A.2d 1358.
Siegel v. Siegel was a case in which it was found that defendant husband's gambling losses equated with a dissipation of marital funds where defendant's gambling "indebtedness" was evidenced solely by a "note from him to a closely-held corporation," and the note, which had never been "called," was executed only ten days after the complaint for divorce was filed.
In Baskinger v. Baskinger, plaintiff brought suit to set aside the alleged fraudulent conveyance of certain business interests by defendant husband. The application was granted on the finding that defendant husband "deliberately planned to desert his wife ... as soon as he had rendered himself judgment-proof." 129 N.J. Eq. at 226, 18 A.2d 845. The court also agreed with plaintiff that the conveyances were "all part of the plan between the three defendants to strip the husband of all apparent interest [in the stores], so as to make it impossible for complainant to obtain support from her husband." Id. at 225, 18 A.2d 845.
The reasoning in Baskinger analogizes closely to the reasoning in Robinette, supra, where, in order to find "dissipation of marital funds," the court required evidence (1) that the marital funds were expended during the period when a "separation or dissolution" was "impending" or, at least "contemplated," and (2) that the marital funds were expended by one spouse with the "intent to deprive" the other spouse of his or her "proportionate *509 share of the marital property." Robinette, 736 S.W.2d at 353-54.
Applying the principles to be extracted from the foregoing discussion, it is clear that a finding of dissipation within the meaning of N.J.S.A. 2A:34-23.1i is mandated by the evidence and the trial court's findings herein. The expenditures were clearly not made to benefit the marital enterprise. They served only defendant's personal interest and were designed to divert from plaintiff her equitable share of the marital assets. The court's finding that defendant was at all times thinking about and planning for a divorce is demonstrated not only by his total abandonment of plaintiff and their child, but by his institution of divorce actions on three different occasions between August 1985 and July 1988.
Furthermore, as the trial court found, defendant's claim that the money he was supplying to his parents was to satisfy an indebtedness was supported by nothing other than his uncorroborated testimony. As the finder of fact, the trial court was free to disbelieve that testimony. Moreover, any claim by defendant to a position of "moral" justification because he was using the money to support his parents is at once neutralized by the fact that the payments were being made at the expense of defendant's wife and child whose paramount claim upon his succor cannot be challenged.
Defendant contends that because he was supporting his parents out of "current earnings," and because there were no marital funds "in existence" when plaintiff filed her divorce complaint on August 7, 1989, all having been "totally expended," there was no basis for an award of equitable distribution. He relies upon the following statement in Carlsen v. Carlsen, 72 N.J. 363, 371, 371 A.2d 8 (1977):
The only assets that can be found eligible for equitable distribution in any case are those acquired by the spouses during the span of the marriage. Should it be determined that all such assets have been expended, there would then be nothing to distribute.
*510 In Carlsen, the Supreme Court implicitly recognized that not every marriage is a financial success from an asset-accumulation viewpoint. For example, as of the filing date of the divorce complaint, the parties may have "expended" all marital assets acquired during the marriage, in the sense that on the filing date there was no accumulation of marital property  no capital product of the marital partnership. In that case, there would be "nothing" for a court to equitably distribute. The observation in Carlsen quoted above was not intended for the benefit of a spouse who had dissipated the marital assets, or otherwise disposed of them in fraud of the other.
N.J.S.A. 2A:34-23 authorizes a court "to effectuate an equitable distribution of the property, both real and personal, which was legally and beneficially acquired by them or either of them during the marriage." (emphasis added). The Legislature intended that its reference to "property" be construed comprehensively. Dugan v. Dugan, 92 N.J. 423, 428, 457 A.2d 1 (1983); Painter v. Painter, 65 N.J. 196, 217, 320 A.2d 484 (1974). In Painter the Supreme Court cautioned that "any disposition of property in fraud of the other spouse could be promptly made the subject of appropriate judicial action." Id. at 218, n. 6, 320 A.2d 484. See also Monte v. Monte, 212 N.J. Super. 557, 567-68, 515 A.2d 1233 (App.Div. 1986) ("Intentional dissipation" of marital assets by one spouse would constitute a "fraud on [the] marital rights" of the other spouse.)
The implicit premise of defendant's argument is that dissipation of marital property can only occur after the filing date of the divorce complaint. We reject that proposition and conclude that the power to order equitable distribution does not depend upon the "existence" of marital property on the filing date of the divorce complaint. Where property has been dissipated during the marriage the asset subject to distribution may take the form of a cash indebtedness to be imposed by the court upon one spouse in favor of the other.
*511 Defendant next contends that the trial court mistakenly used defendant's marital fault as a criterion in effectuating equitable distribution. He correctly argues that marital fault on the part of one spouse is not one of the criteria or circumstances that may properly be taken into account in determining in a given case how the distribution may most fairly be made, citing Chalmers v. Chalmers, 65 N.J. 186, 193, 320 A.2d 478 (1974). Here, in ordering distribution, the trial court noted defendant's behavior in "absolutely abandoning" his wife and child in order to provide for his parents. It then made the following statement:
The Court finds that based upon his failure to contact his family, actually to abandon them, and certainly not to offer any support during that time, up to the time he was ordered by this Court through Judge Carchman's pendente lite order of February 14, 1990, when he was ordered to actually support his wife and his child, instead he supports his parents. So he says. Or secretes funds, or does something with money that he's earning, and it's certainly not going to a family that this Court, and the law of this state, requires that he provide for.
Thereafter, the court found that the money given to defendant's parents "was a marital fund, and subject to equitable distribution."
As we stated earlier, defendant's conduct was fairly to be considered in determining whether the large payments to his parents and his use of $19,000 to support his personal lifestyle constituted dissipation of marital assets. Thus, the trial court was free to take into account defendant's abandonment and callous disregard of his family, not because they reflected matrimonial "fault," but because they revealed in the expenditures an intent to deny plaintiff her share of marital assets.
Defendant complains of an "obvious error" in the trial court's calculations as to the money expended by defendant to support his parents for a period of 32 months prior to the filing of the divorce complaint. The figure of $58,624 was reached after multiplying by 32 the sum of $916 for each parent. The court drew its basic information concerning the living expenses of defendant and his parents from defendant's case information statement. Defendant now says that as the trial progressed "it *512 became clear that the Defendant did not earn the sums reflected in his 1989 Case Information Statement for those 32 months, nor did he continually support his parents for 32 months prior to the filing of the complaint." He adds that from his income tax figures it appears that "[d]efendant's testimony was in error when he stated that his budgeted expenses and support available to his parents were the same as he stated in November 1989, and continued for 32 months prior to the filing of the complaint."
The miscalculation, if any, was the product of defendant's own mistake, so naturally no objection was taken below. The Supreme Court stated in Nieder v. Royal Indemnity Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973):
It is a well-settled principle that our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available "unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest." (citation omitted).
Accordingly, we do not consider this issue as it was not properly raised below.
Defendant also complains of error in the trial court's calculations leading to its award of alimony. We will not attempt to summarize all of the complex calculations which defendant contends should have been factored into the court's ultimate result. The argument, however, asserts that the alimony award of $125 per week and child support of $225 per week is based upon the erroneous assumption that defendant's "net spendable income" was $1213 per week. Our examination of the record strongly suggests that the correct figure is $1,012.95 and that the parties were utilizing this amount throughout the trial. Because the record is somewhat obscure as to this point, we will remand the matter to the trial court for the sole purpose of reconsidering the award of alimony and child support in light of the entire record.
Defendant challenges the trial court's award of counsel fees in the amount of $6000 in favor of plaintiff. He relies *513 upon Darmanin v. Darmanin, 224 N.J. Super. 427, 540 A.2d 913 (App.Div. 1988). Darmanin is notable for its holding that under Williams v. Williams, 59 N.J. 229, 233, 281 A.2d 273 (1971), the good faith of the party against whom counsel fees are being assessed may not be taken into consideration. Id. at 431, 540 A.2d 913. Darmanin was decided on April 22, 1988. Effective September 1, 1988, N.J.S.A. 2A:34-23 was amended to provide that on counsel fee applications the court shall consider, in addition to the financial circumstances of the parties, "the good or bath faith of either party." (Emphasis added).
The fee application originally submitted herein was for $18,750. In considering the application, the trial court stated there were "issues of bad faith involved on the part of Dr. Kothari in his behavior with respect to requiring the type of trial that was held." The statutory amendment was an obvious response to the holding of Darmanin and in unmistakable terms authorizes a trial court to take into consideration the good or bad faith of the party against whom counsel fees are sought to be assessed. This has been the result reached in two published Chancery Division opinions, Sheridan v. Sheridan, 247 N.J. Super. 552, 572, 589 A.2d 1067 (Ch.Div. 1990), and Dilger v. Dilger, 242 N.J. Super. 380, 391, 576 A.2d 951 (Ch.Div. 1990), and we approve of those determinations. We also conclude that the amount of the counsel fee awarded is compatible with plaintiff's financial needs and the defendant's ability to pay and that the trial court's determination is supported by substantial credible evidence in the record.
Defendant's final contention is that the trial court erred in directing that the child of the marriage be designated as the sole beneficiary under defendant's life insurance policy. Since the entry of the divorce judgment, defendant has remarried and he argues that the "making of a single child the beneficiary of close to $400,000.00 [in] life insurance, when he [defendant] has a new wife, and perhaps, future children receiving no [life *514 insurance] benefits is not equitable." Given that defendant remarried after the judgment of divorce was entered, we cannot conceive how the trial court could have been "in error." If defendant intends to be understood as asserting a claim of "changed circumstances" he may consider an appropriate application to the trial court on that basis. See Lepis v. Lepis, 83 N.J. 139, 145-46, 416 A.2d 45 (1980).
The matter is remanded to the Chancery Division for reconsideration of alimony and child support in accordance with this opinion. In all other respects, the judgment presented for review is affirmed.