MEREDITH FINAN *v.* JOHN FINAN
(SC 17918)

Norcott, Katz, Palmer, Vertefeuille and Schaller, Js.

Argued February 4—officially released July 1, 2008

*Charles D. Ray*, for the appellant (plaintiff).

*Sperry A. DeCew*, for the appellee (defendant).

*Opinion*

NORCOTT, J. The principal issue in this certified appeal requires us to answer the question, which was left unanswered in our recent decision in *Gershman* v. *Gershman*, 286 Conn. 341, 350–51 n.10, 943 A.2d 1091 (2008), of whether a trial court fashioning financial orders in dissolution cases may consider a party's pre-separation dissipation of marital assets. The plaintiff, Meredith Finan, appeals, following our grant of certification,[1] from the judgment of the Appellate Court reversing in part the financial orders of the trial court

---

[1] We granted the plaintiff's petition for certification to appeal, limited to the following question: "Did the Appellate Court properly conclude that the record was inadequate to review the plaintiff's claims regarding preseparation dissipation of marital assets for 'adult entertainment' and cash spending?" *Finan* v. *Finan*, 282 Conn. 926, 926 A.2d 666 (2007).

disposing of the marital residence and ordering the defendant, John Finan, to pay her unallocated alimony and child support of $95,000 annually based on his salary of $225,000. *Finan* v. *Finan*, 100 Conn. App. 297, 299, 918 A.2d 910 (2007). The plaintiff claims that the Appellate Court improperly concluded that the record was inadequate for review of her dissipation claim, and further asks this court, in the interest of judicial economy, to determine whether trial courts should consider both preseparation and postseparation dissipation of marital assets when fashioning financial orders. We conclude that the record is adequate for review of the plaintiff's claim and that a trial court should consider preseparation dissipation of marital assets, so long as the actions constituting dissipation occur either: (1) in contemplation of divorce or separation; or (2) while the marriage is in serious jeopardy or is undergoing an irretrievable breakdown. Accordingly, we reverse the judgment of the Appellate Court.

The Appellate Court decision sets forth the following facts and procedural history. "The parties married on September 11, 1982, and, at the time of the trial, had three children, of which two were minors. The court rendered judgment dissolving the marriage on March 11, 2005. The court found that the marriage had broken down irretrievably without attributing fault to either party as to the cause of the breakdown.

"The court entered orders regarding property distribution, alimony, child support and other miscellaneous matters. As part of the dissolution decree, the court ordered the defendant to pay to the plaintiff 'unallocated alimony and child support in equal semimonthly installments on the first and fifteenth of each month, the annual sum of $95,000 based on his base salary of $225,000.' " Id.

The plaintiff appealed the trial court's judgment to the Appellate Court, claiming, inter alia, that the trial court "improperly refused to admit into evidence a report detailing the defendant's preseparation dissipation of marital assets . . . [and] that the court failed to consider evidence that the defendant dissipated marital assets by spending large sums of money prior to the parties' separation." Id., 308. Specifically, at trial, the report was initially admitted into evidence over the defendant's objection, but subsequently was stricken, redacted and then readmitted after the defendant renewed his objection. Id. The Appellate Court declined to review the plaintiff's claim pertaining to this ruling, however, concluding that the record was inadequate for review because the plaintiff had failed to have the first report admitted as an exhibit or marked for identification. Id., 308–309. This certified appeal followed.

I

We begin with the certified issue in this appeal, namely, the plaintiff's claim that the Appellate Court improperly concluded that the record is inadequate to review her dissipation claims. Specifically, the plaintiff claims that there was no need for her to mark for identification exhibit G, the initial financial report summarizing activity in the parties' joint bank accounts, because it already had been admitted into evidence at trial and subsequently was replaced in the record with another report, exhibit L, which was limited to only postseparation expenditures. The plaintiff contends that the second report, exhibit L, "was entered as a wholly different exhibit . . . and not as a substitute for the original report. Thus, there can be no dispute that both exhibits were made a part of the trial court record." In addition, the plaintiff proffered copies of both exhibits in the appendix to her brief for Appellate Court review. The plaintiff further emphasizes that "the basis of the trial court's ruling is obvious and fully contained in the

record—the trial court ruled that it would consider only postseparation spending by [the defendant]." In response, the defendant relies on *Carpenter* v. *Carpenter*, 188 Conn. 736, 453 A.2d 1151 (1982), and argues that the plaintiff failed to provide the court with an adequate record for review by not marking the stricken document for identification. We agree with the plaintiff, and conclude that the record in this case is adequate for appellate review of her claim, namely, that the trial court improperly refused to admit evidence of potential marital asset dissipation that occurred prior to the separation of the parties.

"The duty to provide this court with a record adequate for review rests with the appellant. . . . It is the responsibility of the appellant to provide an adequate record for review as provided in [Practice Book §] 61-10. . . . The appellant shall determine whether the entire trial court record is complete, correct and otherwise perfected for presentation on appeal. . . . Conclusions of the trial court cannot be reviewed where the appellant fails to establish through an adequate record that the trial court incorrectly applied the law or could not reasonably have concluded as it did . . . . The purpose of marking an exhibit for identification is to preserve it as part of the record and to provide an appellate court with a basis for review." (Citations omitted; internal quotation marks omitted.) *Daigle* v. *Metropolitan Property & Casualty Ins. Co.*, 257 Conn. 359, 364, 777 A.2d 681 (2001); id., 363 (record inadequate for review because "plaintiff did not enter into the record for identification purposes the income tax returns that he had intended to offer as proof").

Notwithstanding this general rule, evidentiary claims have been reviewed on appeal, even when the excluded exhibit was not marked for identification, if the record reveals an adequate substitute for that exhibit. See *Cousins* v. *Nelson*, 87 Conn. App. 611, 615 n.2, 866

A.2d 620 (2005) (record adequate for review of medical journal article because "an adequate substitute identification exists here in the offer of proof of the contents of the cited article that was made by the plaintiff in the absence of the jury, and the article also was attached to the plaintiff's subsequent motion to set aside the verdict"); *Esposito* v. *Presnick*, 15 Conn. App. 654, 662 n.2, 546 A.2d 899 (reviewing claim that trial court improperly refused to admit tape recordings containing admissions by defendant, despite failure to mark them for identification, because "an adequate substitute identification exists here in the offer of proof of the contents of the tape recordings made by the plaintiffs in the absence of the jury"), cert. denied, 209 Conn. 819, 551 A.2d 755 (1988); *Canton Motorcar Works, Inc.* v. *DiMartino*, 6 Conn. App. 447, 456, 505 A.2d 1255 (case was "one of those rare instances in which the record provides an adequate substitute for the proffered but unmarked items . . . [because] [t]he material in question is a disassembled automobile . . . [and] the defendant had admitted as full exhibits forty photographs of the automobile, some of which depict the parts detached from the body before reconstructive work, some showing the parts after work had been done, and others showing the body of the car with and without various parts . . . [and] the testimony of the witnesses extensively describes the parts depicted in the photographs and the details of the work that had been done on various parts"), cert. denied, 200 Conn. 802, 509 A.2d 516 (1986); *Plawecki* v. *Angelo Tomasso, Inc.*, 1 Conn. App. 48, 50 n.3, 467 A.2d 944 (1983) ("find[ing] an adequate substitute in the record for the [plaintiff's] statement, notwithstanding the fact that it was not marked as an exhibit for identification"), cert. denied, 192 Conn. 801, 470 A.2d 1218 (1984).

Having reviewed the record, we note that the unredacted, original exhibit G remained a part of the court

file before both the Appellate Court and this court on appeal, and that it also has been duplicated in the appendix to the plaintiff's brief. Moreover, the basis of the trial court's ruling is abundantly clear from a review of the transcripts. During the testimony of Karlene Mitchell—a divorce financial examiner who had created exhibit G, the compilation at issue that summarized the parties' joint bank accounts from January, 1999, through November, 2004—the trial court ruled that "what I need basically is, from the point of separation to the present time, which is contained in this compilation."[2] Indeed, the trial court clearly rejected the plaintiff's attempt to ask it "to consider the propriety of your getting all of the information from December, 1999." After further testimony by Mitchell, the plaintiff then agreed to redact the portion of the compilation that preceded the parties' separation. When Mitchell returned to court the following day, she brought the redacted compilation with her, which was admitted as exhibit L in place of exhibit G, which had been stricken from the record.

We conclude that the Appellate Court improperly declined to review the plaintiff's claim in this appeal on the basis of her failure to mark the report, exhibit G, for identification.[3] The state of the record in this case provides a more than ample basis for understanding and

---

[2] The trial court emphasized its focus on the defendant's spending during the parties' separation, stating: "I think it's not the most monumental thing that he attended strip clubs. I don't approve of it necessarily, but on the other hand, he did make comments that he did. He also made comments about supporting this other woman. I don't know whether any of that is contained in this, but I think I'm entitled to see what his income and expenses were over the last three years."

[3] We note, however, that the plaintiff would have been well served to file a motion for rectification, pursuant to Practice Book § 66-5, and have exhibit G marked for identification. See State v. Calabrese, 279 Conn. 393, 405 n.16, 902 A.2d 1044 (2006) (motion for rectification used to identify "answering machine containing the recordings at issue [that] was inadvertently not marked for identification at trial").

reviewing the trial court's ruling,[4] namely, that it would not consider claims of improper spending that occurred prior to the parties' separation.

## II

Although outside the scope of the certified question in this appeal, the plaintiff requests that this court review, in the interest of judicial economy, her claim that the trial court improperly refused to consider the defendant's dissipation of marital assets prior to their separation. "Because both parties have briefed the issue and it was addressed at oral argument before this court," we will review the issue in the interest of judicial economy. *Montoya* v. *Montoya*, 280 Conn. 605, 617 n.11, 909 A.2d 947 (2006). The plaintiff claims that the trial court was required, pursuant to General Statutes § 46b-81 (c),[5] to consider both preseparation and postseparation behavior in determining the amount of marital property to be assigned to each respective party. The plaintiff further asserts, citing *Bender* v. *Bender*, 258 Conn. 733, 742, 785 A.2d 197 (2001), that § 46b-81 "does not limit, either by timing or method of acquisition or

[4] We disagree with the defendant's reliance on *Carpenter* v. *Carpenter*, supra, 188 Conn. 736. In that case, this court declined to consider a claim that the trial court improperly had excluded from evidence the plaintiff's employment contract. Id., 745. The contract was never marked for identification, presented to the trial court or to this court, and the trial court ruled on the proffer "perfunctorily." Id., 744. *Carpenter* is, therefore, distinguishable from the present case, wherein the exhibit was at one point admitted into evidence, was considered at length on the record by the trial court, and is readily available for our review on appeal.

[5] General Statutes § 46b-81 (c) provides: "In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates."

by source of funds, the property subject to a trial court's broad allocative power." The plaintiff also claims that several decisions of both this court and the Appellate Court support the proposition that dissipation may occur at any time, and that those decisions, therefore, support her contention that a trial court should consider both preseparation and postseparation dissipation when distributing marital assets. In response, the defendant "does not contest that evidence of preseparation expenditures can be considered relevant." Instead, the defendant claims that the trial court's temporal limitation of exhibit G, whereby all preseparation expenditures were redacted, was harmless, because the plaintiff has failed to show that the trial court's distribution would have been different in the absence of such limitation. We conclude that a trial court may consider evidence that a spouse dissipated marital assets prior to the couple's physical separation, for purposes of determining an equitable distribution of property under § 46b-81, so long as the actions constituting dissipation occur either: (1) in contemplation of divorce or separation; or (2) while the marriage is in serious jeopardy or is undergoing an irretrievable breakdown.

In *Gershman* v. *Gershman*, supra, 286 Conn. 351, we recently concluded that "dissipation in the marital dissolution context requires financial misconduct involving marital assets, such as intentional waste or a selfish financial impropriety, coupled with a purpose unrelated to the marriage." We now address the question left unanswered in *Gershman*, namely, whether a temporal element is an essential component of dissipation. See id., 350–51 n.10. More specifically, we must determine whether transactions that occur prior to the physical separation of spouses may constitute dissipation of marital assets for purposes of equitable property distribution under § 46b-81. As this issue is a matter of first impression for Connecticut's appellate courts, it

presents a question of law subject to plenary review. *Genesky* v. *East Lyme*, 275 Conn. 246, 252, 881 A.2d 114 (2005).

We begin by examining the language of the relevant statute. Section 46b-81 provides in relevant part: "(a) At the time of entering a decree annulling or dissolving a marriage or for legal separation pursuant to a complaint under section 46b-45, the Superior Court may assign to either the husband or wife all or any part of the estate of the other. . . . (c) In fixing the nature and value of the property . . . to be assigned . . . [t]he court shall also consider the contribution of each of the parties in the acquisition, *preservation* or appreciation in value of their respective estates." (Emphasis added.)

As the term "preservation" is not defined in the statute, "General Statutes § 1-1 (a) requires that we construe the term in accordance with the commonly approved usage of the language . . . [and, therefore] it is appropriate to look to the common understanding of the term as expressed in a dictionary." (Citation omitted; internal quotation marks omitted.) *Jim's Auto Body* v. *Commissioner of Motor Vehicles*, 285 Conn. 794, 808, 942 A.2d 305 (2008). The definition of "preserve" in the American Heritage Dictionary of the English Language (4th Ed. 2000) is "[t]o maintain in safety from injury, peril, or harm; protect. . . ." "Dissipation," on the other hand, is defined as "[w]asteful expenditure or consumption. . . ."[6] Id. Under the common usage of the terms, "dissipation" is the financial antithesis of "preservation." More specifically, a party that dissipates assets detracts from the preservation of those assets. Accordingly, Connecticut trial courts have the statutory authority, under § 46b-81, to consider a

---

[6] See also Black's Law Dictionary (8th Ed. 2004) (dissipation is "[t]he use of an asset for an illegal or inequitable purpose, such as a spouse's use of community property for personal benefit when a divorce is imminent").

spouse's dissipation of marital assets when determining the nature and value of property to be assigned to each respective spouse. See also *Gershman* v. *Gershman,* supra, 286 Conn. 341. The language of § 46b-81 does not, however, expressly provide any temporal limitation on a court's consideration of marital asset dissipation. Furthermore, after review, we are unable to extrapolate any meaningful guidance from the relationship of § 46b-81 to other statutes, its legislative history or its underlying policy, with regard to whether the legislature intended to limit a court's consideration of dissipation to actions occurring within a prescribed time period. Accordingly, our resolution of this issue requires us to address a gap in the statute.[7]

A review of case law in other jurisdictions reveals that the majority of our sister states allow trial courts to consider a spouse's dissipation of marital assets, that occurs *prior* to the spouses' physical separation, in determining the allocation of assets to each respective spouse. See, e.g., *Hrudka* v. *Hrudka,* 186 Ariz. 84, 93, 919 P.2d 179 (App. 1995) (trial court may compensate nondissipating spouse when apportioning community property, and governing statute contains no temporal restriction on court's consideration of dissipation); *In re Marriage of Paulsen,* 677 P.2d 1389, 1390 (Colo. App. 1984) (trial court properly considered whether preseparation actions constituted dissipation); *Mahmoud* v. *Al-Naser,* Delaware Supreme Court, Docket No. CN02-09157, 2004 Del. LEXIS 237, *2 (May 28, 2004) (family court judge properly found that husband dissipated marital assets prior to separation); *Herron* v.

---

[7] "We have attempted in this case to answer the specific question before us and, in the process, to make sense of a complex statutory scheme that presents gaps and internal inconsistencies . . . . We, therefore, urge the legislature to address these gaps and inconsistencies, because this is an area that, to the extent feasible, should be addressed by specific statutory language rather than by judicial interpretation." *Fredette* v. *Connecticut Air National Guard,* 283 Conn. 813, 839, 930 A.2d 666 (2007).

*Johnson*, 714 A.2d 783, 785 (D.C. 1998) (requiring that dissipation occur "at a time when the marriage is undergoing an irreconcilable breakdown . . . [which] need not coincide with formal separation or initiation of legal proceedings" [citations omitted; internal quotation marks omitted]); *Messaadi* v. *Messaadi*, 282 Ga. 126, 128, 646 S.E.2d 230 (2007) (trial court properly considered potential preseparation dissipation "in awarding the entire marital residence to the [w]ife"); *In re Marriage of Rai*, 189 Ill. App. 3d 559, 565, 545 N.E.2d 446 (1989) ("[a] party can be found guilty of dissipation even though the act occurred prior to separation or prior to the commencement of the dissolution proceedings"); *In re Marriage of Sloss*, 526 N.E.2d 1036, 1040 (Ind. App. 1988) (trial court must consider both preseparation and postseparation dissipation of marital assets); *In re Marriage of Scott*, Iowa Court of Appeals, Docket No. 7-540/06-1152, 2007 Iowa App. LEXIS 1129, *9 (October 24, 2007) ("[w]e have consistently recognized that conduct of a spouse that results in the loss or disposal of property that would otherwise be subject to division in a dissolution of marriage action may be considered in making an equitable distribution of the parties' property"); *In re Marriage of Rodriguez*, 266 Kan. 347, 352, 969 P.2d 880 (1998) (trial judge may consider preseparation dissipation); *Brosick* v. *Brosick*, 974 S.W.2d 498, 502 (Ky. App. 1998) (trial court properly found that husband dissipated assets during marriage); *Karmand* v. *Karmand*, 145 Md. App. 317, 345, 802 A.2d 1106 (2002) (evidence supported finding that assets were dissipated prior to physical separation of parties); *Salten* v. *Ackerman*, 64 Mass. App. 868, 874, 836 N.E.2d 323 (trial court did not abuse discretion in considering preseparation dissipation and in awarding "vastly disproportionate" division of marital assets), review denied, 445 Mass. 1109, 840 N.E.2d 56 (2005); *Dove* v. *Dove*, 773 S.W.2d 871, 873 (Mo. App. 1989) (although not using term dissi-

pation, trial court properly considered wife's unilateral withdrawals from joint accounts and loans to her children, during parties' marriage, in awarding wife only 4 to 9.5 percent of marital estate); *In re Marriage of Merry*, 213 Mont. 141, 153, 689 P.2d 1250 (1984) ("the court must consider any dissipation of an estate by one party"); *Malin* v. *Loynachan*, 15 Neb. App. 706, 711, 736 N.W.2d 390 (2007) (requiring that dissipation occur during irretrievable marital breakdown, but declining to conclude that such "breakdown can be found only when the parties are estranged or have separated"); *In re Martel*, 157 N.H. 53, 944 A.2d 575, 581 (2008) (refusing to adopt any intent or timing element for determination of whether dissipation occurred); *Strang* v. *Strang*, 222 App. Div. 2d 975, 977–78, 635 N.Y.S.2d 786 (1995) ("[w]here the wasteful dissipation of assets can be traced to a party's poor judgment, unwillingness or inability to manage, that portion of the amount dissipated must be charged against said party's equitable share"); *Wornom* v. *Wornom*, 126 N.C. App. 461, 466, 485 S.E.2d 856 (1997) (trial court properly found preseparation dissipation); *Hamad* v. *Hamad*, Ohio Court of Appeals, Docket Nos. 06AP-516, 06AP-517, 2007 Ohio App. LEXIS 2069, *P82 (May 10, 2007) ("[w]e cannot say as a matter of law that the trial court erred . . . by adopting a finding that the unilateral dissipation of marital funds, which occurred during the marriage and prior to separation, constituted financial misconduct" [internal quotation marks omitted]); *Cooksey* v. *Cooksey*, 280 S.C. 347, 351–52, 312 S.E.2d 581 (App. 1984) (although not using term dissipation, concluding that trial court improperly failed to consider whether one spouse had secreted marital funds in anticipation of litigation, simply because parties were not separated at that time); *Johnson* v. *Johnson*, 734 N.W.2d 801, 811 (S.D. 2007) (trial court properly found preseparation dissipation); *Altman* v. *Altman*, 181 S.W.3d 676, 682

(Tenn. App.) ("the allegedly improper or wasteful expenditure or transaction must be considered in the context of the marriage as a whole, and it must be weighed along with all the other relevant factors in the case"), appeal denied, 2005 Tenn. LEXIS 1016 (2005); *Rafidi* v. *Rafidi*, 718 S.W.2d 43, 45 (Tex. App. 1986) (trial court properly considered preseparation diminution of community property when determining equitable distribution); *In re Marriage of Williams*, 84 Wash. App. 263, 270–71, 927 P.2d 679 (1996) (trial court properly considered whether preseparation gambling constituted dissipation), review denied, 131 Wash. 2d 1025, 937 P.2d 1102 (1997); see also R.I. Gen. Laws § 15-5-16.1 (a) (2003) ("[i]n determining the nature and value of the property, if any, to be assigned, the court . . . shall consider . . . [11] [e]ither party's wasteful dissipation of assets or any transfer or encumbrance of assets made in contemplation of divorce without fair consideration"); W.V. Code § 48-7-103 (4) (2004) (court may properly award unequal division of marital property, "after a consideration of . . . [4] [t]he extent to which either party, during the marriage, may have conducted himself or herself so as to dissipate or depreciate the value of the marital property"). We agree with the majority of our sister states, and conclude, therefore, that trial courts are permitted to consider, when determining the allocation of assets between spouses in a dissolution proceeding, whether a spouse's actions that occur *prior* to the spouses' physical separation constitute the dissipation of marital assets.

Several of the states that allow courts to recognize preseparation dissipation also require, however, that the actions constituting dissipation must occur either: (1) in contemplation of divorce or separation;[8] or (2)

---

[8] See, e.g., *In re Marriage of Jorgenson*, 143 P.3d 1169, 1173 (Colo. App. 2006); *Brosick* v. *Brosick*, supra, 974 S.W.2d 500; *Griepp* v. *Griepp*, 381 N.W.2d 865, 869 (Minn. App. 1986); *Conrad* v. *Conrad*, 76 S.W.3d 305, 314 (Mo. App. 2002); *Fountain* v. *Fountain*, 148 N.C. App. 329, 341, 559 S.E.2d 25 (2002); *DeAngelis* v. *DeAngelis*, 923 A.2d 1274, 1281 (R.I. 2007).

when the marriage was in serious jeopardy or undergoing an irretrievable breakdown.[9] At least three rationales have been offered for why courts have adopted the foregoing temporal restrictions. For instance, "it has been argued that without a breakdown test [or some equivalent test], every expenditure and economic decision made during the marriage can be questioned, and the courts would become auditing agencies for every failed marriage." L. Becker, "Conduct of a Spouse That Dissipates Property Available for Equitable Property Distribution: A Suggested Analysis," 52 Ohio St. L.J. 95, 108 (1991); see also *In re Marriage of Getautas,* 189 Ill. App. 3d 148, 155, 544 N.E.2d 1284 (1989) ("[i]t should not be the trial court's role to account for the various financial inequities found in a 'bad' marriage or bad business decisions, and the court should not be required to consider allegations of 'extravagant purchases' prior to the irreconcilable breakdown"); B. Turner, Equitable Distribution of Property (2d Ed. 1994) p. 486 ("Illinois decisions properly recognize that an expanded dissipation period would make the law harder to administer"). "It has also been suggested that the breakdown test appropriately draws the line between, on the one hand, the right of a spouse to be protected against improper expenditures by the other spouse and, on the other hand, the right of a spouse to manage and control property owned solely by that spouse." L.

___

[9] See, e.g., *Herron* v. *Johnson,* supra, 714 A.2d 785; *Murray* v. *Murray,* 636 So. 2d 536, 539 (Fla. App. 1994); *In re Marriage of Zweig,* 343 Ill. App. 3d 590, 595, 798 N.E.2d 1223 (2003); *Karmand* v. *Karmand,* supra, 145 Md. App. 345; *Kittredge* v. *Kittredge,* 441 Mass. 28, 37, 803 N.E.2d 306 (2004); *Malin* v. *Loynachan,* supra, 15 Neb. App. 710.

At least two states recognize *both* the "in contemplation of divorce" and the "irretrievable breakdown" temporal standards. See *Kothari* v. *Kothari,* 255 N.J. Super. 500, 506–509, 605 A.2d 750 (App. Div. 1992); *Broadbent* v. *Broadbent,* 211 S.W.3d 216, 220 (Tenn. 2006) (recognizing that " 'dissipation' . . . typically refers to the use of funds after a marriage is irretrievably broken," and, "[t]hus, dissipation generally occurs in contemplation of the dissolution of a marriage").

Becker, supra, 108, citing *Booth* v. *Booth*, 7 Va. App. 22, 27–28, 371 S.E.2d 569 (1988) ("at least until the parties contemplate divorce, each is free to spend marital funds"); see also annot., 41 A.L.R.4th 420 (1985) ("until such time as the parties are contemplating a divorce, they are generally vested with the authority to spend marital funds for their own enjoyment"); *Kothari* v. *Kothari*, 255 N.J. Super. 500, 506–507, 605 A.2d 750 (App. Div. 1992) (same); *In re Marriage of Coyle*, 671 N.E.2d 938, 943–44 (Ind. App. 1996) ("Even a sharp disagreement between spouses over the wisdom of an expenditure, without more, does not render that expenditure a dissipation of marital assets . . . . The test is whether the asset was actually wasted or misused."). Furthermore, the temporal restrictions better assist courts in determining the impropriety of a spouse's actions, namely, whether the actions were carried out, at least in part, to deprive the other spouse of assets that would otherwise be available for equitable division by the court. See, e.g., *Kittredge* v. *Kittredge*, 441 Mass. 28, 36, 803 N.E.2d 306 (2004) (noting, with approval, that "other jurisdictions define dissipation as a spouse's expenditures for his or her own personal enjoyment at a time when the marriage is apparently coming to an end, from which it can be inferred that the spouse's expenditures were made in order to deprive the other spouse of his or her fair share of the marital estate"); *Karmand* v. *Karmand*, supra, 145 Md. App. 343–45 (upholding finding of trial court that spouse intended to remove property from equitable distribution by transferring vehicle title and giving money to his daughter at time when marriage was undergoing irretrievable breakdown); *Kothari* v. *Kothari*, supra, 509 (defendant's expenditures, made while "thinking about and planning for a divorce," "served only defendant's personal interest and were designed to divert from plaintiff her equitable share of the marital assets"). In addition,

it has been noted that, when imposing temporal limitations on when trial courts may consider acts of dissipation, courts should remain cognizant of the fact that "depletion [of assets] in anticipation of divorce is not limited to depletion after the date of separation or after the completion of the marital breakdown. Many spouses begin divorce planning before actual separation, when the marital breakdown is not yet complete." B. Turner, Equitable Distribution of Property (2004 Sup.) p. 865; see also *In re Marriage of Zweig*, 343 Ill. App. 3d 590, 598, 798 N.E.2d 1123 (2003) ("[a]n irreconcilable breakdown of a marriage does not necessarily require a separation or a filing of divorce by one spouse").

We are persuaded by the foregoing rationales for adopting temporal limitations, with regard to the trial court's consideration of *when* the alleged dissipative actions of a spouse occur.[10] Accordingly, we conclude

[10] It should be noted, however, that courts in a few of our sister states have declined to impose any temporal limitation on their ability to consider a spouse's dissipation of marital assets, based on the fact that the relevant state statutes did not expressly provide for such limitation. See, e.g., *Bertholet* v. *Bertholet*, 725 N.E.2d 487, 499–500 (Ind. App. 2000); *In re Marriage of Rodriguez*, supra, 266 Kan. 352; *In re Martel*, supra, 944 A.2d 581; *Anstutz* v. *Anstutz*, 112 Wis. 2d 10, 13, 331 N.W.2d 844 (App. 1983). We are not, however, persuaded by these decisions.

With regard to *Anstutz*, the Wisconsin legislature subsequently enacted a temporal restriction on the trial courts' consideration of dissipation for purposes of determining how equitably to divide marital property. See Wisc. Stat. § 767.63 (2005–2006) ("any asset with a fair market value of $500 or more that would be considered part of the estate of either or both of the parties if owned by either or both of them at the time of the action and that was transferred for inadequate consideration, wasted, given away, or otherwise unaccounted for by one of the parties *within one year prior to the filing of the petition or the length of the marriage*, whichever is shorter, is rebuttably presumed to be property subject to division" [emphasis added]).

The courts in *Bertholet* v. *Bertholet*, supra, 725 N.E.2d 499, and *In re Martel*, supra, 944 A.2d 581, both refused to impose a temporal restriction because the relevant statutes required that the courts consider whether a party committed dissipation "during the marriage." The court in *Bertholet* determined, however, that "transactions which are remote in time and effect . . . may be deemed insignificant [by the trial court], while transactions which occur during the breakdown of the marriage, just prior to filing a petition or during the pendency of an action, may require heightened scru-

that, in order for a transaction to constitute dissipation of marital assets for purposes of equitable distribution under § 46b-81, it must occur either: (1) in contemplation of divorce or separation; or (2) while the marriage is in serious jeopardy or is undergoing an irretrievable breakdown.[11] Trial courts are not precluded from con-

tiny." (Internal quotation marks omitted.) *Bertholet* v. *Bertholet*, supra, 499–500. Likewise, in *In re Martel*, supra, 581, the court implicitly determined that a trial court may place similar emphasis on *when* a party committed dissipation, by concluding that a trial court may consider "any other factor" it deems relevant in dividing marital assets. Thus, courts in these states may properly accord increased weight to acts of dissipation occurring at or near the time of a marriage's breakdown.

In *In re Marriage of Rodriguez*, supra, 266 Kan. 352, the court utilized Black's Law Dictionary (6th Ed.1990), in determining whether the definition of "dissipate" encompassed a temporal element, and, therefore, whether the relevant statute imposed a temporal restriction on the trial courts' consideration of dissipation. The definition of "dissipate" in Black's Law Dictionary (6th Ed. 1990), is "[t]o destroy or waste, as to expend funds foolishly. . . ." Neither Black's Law Dictionary (7th Ed. 1999) nor Black's Law Dictionary (8th Ed. 2004) provide a definition of "dissipate," but rather define "dissipation" as "[t]he use of an asset for an illegal or inequitable purpose, such as a spouse's use of community property for personal benefit *when a divorce is imminent*." (Emphasis added.) Accordingly, had the decision been rendered just one year later, *after* release of Black's Law Dictionary (7th Ed. 1999), the *Rodriguez* court *may* well have reached a different conclusion.

[11] Whether these temporal elements have been met, however, is a question of fact for the trial court. See, e.g., *In re Marriage of Getautas*, supra, 189 Ill. App. 3d 152; *Kothari* v. *Kothari*, supra, 255 N.J. Super. 506; *Altman* v. *Altman*, supra, 181 S.W.3d 682. What constitutes, for example, an "irretrievable breakdown" or "serious jeopardy" will, therefore, vary with the circumstances of each case. Accordingly, we refrain from defining these temporal elements with further specificity, because an attempt to articulate a more precise standard may, in practice, be overly restrictive. While a trial court's determination of whether dissipative actions occurred may give rise to an exhaustive individualized inquiry in each case; see, e.g., *In re Marriage of Zweig*, supra, 343 Ill. App. 3d 599 ("[e]ach dissipation situation is individual and requires a careful factual analysis"); it, in practice, imposes no greater burden on the trial court than normally exists in marital dissolution actions. In fact, dissolution actions are fraught with such individualized inquiries. For example, in simply determining the nature and value of property to be assigned between the parties in a dissolution action, a trial court is required to consider "the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income . . . [as well as]

sidering preseparation dissipation, therefore, so long as the transactions constituting dissipation occur within the foregoing temporal framework.

"We previously have characterized the financial orders in dissolution proceedings as resembling a mosaic, in which all the various financial components are carefully interwoven with one another. . . . Because it is uncertain whether the trial court's financial awards will remain intact after reconsidering the issue of dissipation of marital assets consistent with this opinion today, the entirety of the mosaic must be refashioned." (Citations omitted.) *Gershman* v. *Gershman*, supra, 286 Conn. 351–52. Accordingly, a new trial is required. See id., 352.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court and to remand the case to that court for a new trial.

In this opinion the other justices concurred.

the contribution of each of the parties in the acquisition . . . of their respective estates." General Statutes § 46b-81 (c).