RICHARD BENNETT, JR., ADMINISTRATOR (ESTATE OF RICHARD BENNETT, SR.) *v.* NEW MILFORD HOSPITAL, INC., ET AL.
(AC 29944)

Bishop, Beach and Foti, Js.

---

536

Argued April 22—officially released October 13, 2009

*Andrew J. Pianka*, for the appellant (plaintiff).

*Bruce F. Gilpatrick*, with whom, on the brief, was *Matthew M. Sconziano*, for the appellees (defendants).

*Opinion*

BISHOP, J. The plaintiff, Richard Bennett, Jr., the administrator of the estate of the decedent, Richard Bennett, Sr., appeals from the judgment of the trial court dismissing in part his medical malpractice action against the defendants, New Milford Hospital, Inc. (hospital), and Frederick Lohse, a physician, on the basis of the plaintiff's failure to comply with the requirements of General Statutes § 52-190a.[1] The plaintiff claims that

[1] General Statutes § 52-190a (a) provides: "No civil action or apportionment complaint shall be filed to recover damages resulting from personal injury or wrongful death occurring on or after October 1, 1987, whether in tort or in contract, in which it is alleged that such injury or death resulted from the negligence of a health care provider, unless the attorney or party filing the action or apportionment complaint has made a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. The complaint, initial pleading or apportionment complaint shall contain a certificate of the attorney or party filing the action or apportionment complaint that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant or for an apportionment complaint against each named apportionment defendant. To show the existence of such good faith, the claimant or the claimant's attorney, and any apportionment complainant or the apportionment complainant's attorney, shall obtain a written and signed opinion of a similar health care provider, as defined in section 52-184c, which similar health care provider shall be selected pursuant to the provisions of said section, that there appears to be evidence of medical negligence and includes a detailed basis for the formation of such opinion. Such written opinion shall not be subject to discovery by any party except for questioning the validity of the certificate. The claimant or the claimant's attorney, and any apportionment complainant or apportionment complainant's attorney, shall retain the original written opinion and shall attach a copy of such written opinion,

because he attached to his complaint a good faith certificate from his attorney in addition to a letter from a similar health care provider stating the belief that there existed evidence of medical negligence, the court improperly granted Lohse's motion to dismiss pursuant to § 52-190a (c).[2] Because we conclude that the opinion letter submitted by the plaintiff was not from a similar health care provider, we affirm the judgment of the trial court as to Lohse. We also dismiss the appeal as to the hospital for lack of a final judgment. See footnote 5.

In his complaint, the plaintiff alleged the following facts, the truth of which we assume for purposes of his appeal. On November 28, 2006, the decedent suffered a diabetic seizure while operating his motor vehicle. Consequently, his vehicle left the road and collided with a concrete wall. He was extracted from his vehicle and transported to New Milford Hospital. He was treated in the emergency department by Lohse, who stabilized the decedent's blood sugar and medicated him for back pain. He was discharged and advised to follow up with

with the name and signature of the similar health care provider expunged, to such certificate. The similar health care provider who provides such written opinion shall not, without a showing of malice, be personally liable for any damages to the defendant health care provider by reason of having provided such written opinion. In addition to such written opinion, the court may consider other factors with regard to the existence of good faith. If the court determines, after the completion of discovery, that such certificate was not made in good faith and that no justiciable issue was presented against a health care provider that fully cooperated in providing informal discovery, the court upon motion or upon its own initiative shall impose upon the person who signed such certificate or a represented party, or both, an appropriate sanction which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney's fee. The court may also submit the matter to the appropriate authority for disciplinary review of the attorney if the claimant's attorney or the apportionment complainant's attorney submitted the certificate."

[2] General Statutes § 52-190a (c) provides: "The failure to obtain and file the written opinion required by subsection (a) of this section shall be grounds for the dismissal of the action."

his primary care physician. Thereafter, the decedent's primary care physician directed him to return to the hospital for further testing where it was discovered that the decedent had sustained a compression fracture of his lumbar spine, an impact fracture of the proximal tibia and right knee effusion. As a consequence of the significant pain that he suffered due to the untreated fractures of the spine and leg, the decedent sustained myocardial ischemia, which resulted in his death on January 9, 2007.

The first two counts of the plaintiff's complaint were against Lohse, and the remaining two counts were against the hospital. Pursuant to § 52-190a (a), the plaintiff attached a good faith certificate from his attorney and a written opinion from a physician. On March 27, 2008, Lohse moved to dismiss counts one and two of the plaintiff's complaint pursuant to § 52-190a (c) on the basis that the plaintiff did not comply with § 52-190a (a). Specifically, Lohse claimed that the author of the opinion letter attached to the plaintiff's good faith certificate was not a similar health care provider and that the opinion failed to provide a "detailed basis" for its formation; see General Statutes § 52-190a (a); as it failed to refer specifically to Lohse. According to the plaintiff's complaint, Lohse specializes in emergency medicine.[3] As to the qualifications of the author of the opinion letter submitted by the plaintiff, the letter stated: "As a practicing and [b]oard certified [g]eneral [s]urgeon with added qualifications in [s]urgical [c]ritical [c]are, and engaged in the practice of trauma surgery, I believe that I am qualified to review the contents of these records for adherence to the existing standard of care. One should note that I regularly evaluate and treat injured patients in the [e]mergency [d]epartment including those who are discharged from the [emergency department] as well as those who require inpatient care. The overwhelming majority of my time at

---

[3] Although the plaintiff's complaint does not indicate whether Lohse is board certified, it is undisputed that he is not.

work is spent providing clinical care in the [emergency department], general ward, intensive care unit and operating room over the last [twelve] years."[4] Lohse claimed that the opinion is not from a similar health care provider as defined in General Statutes § 52-184c because the opinion author is not board certified in emergency medicine and, therefore, fails to comply with the requirements of § 52-190a (a). On May 5, 2008, the court granted Lohse's motion to dismiss and this appeal followed.[5]

---

[4] The plaintiff's attorney filed an affidavit in support of his objection to Lohse's motion to dismiss. The affidavit indicated, inter alia, that both Lohse and the expert are trained general surgeons. The affidavit further provided that the expert: is board certified by the American Board of Surgery; practices regularly in the emergency room of a level one trauma center; has spent the majority of his time providing clinical care in the emergency department, general ward, intensive care unit and operating room over the past twelve years; teaches as a professor of emergency medicine; has sat on the emergency care committee and the emergency department observation unit steering committee, among many other committees at a university medical school; has been the conference section chairman for the emergency medicine session of an annual international congress of medical syndicate; has taught and developed courses at medical colleges covering various seminars for emergency medicine; has authored educational materials in the area of emergency medical services and coauthored publications published in various medical journals, including the Journal of Emergency Medicine; and has coauthored books and chapters or contributed to publications on the topics of trauma resuscitation, expert rapid response and published on the topic of clinical procedures in emergency medicine, as well as others. It would appear from this recitation that the plaintiff's expert may be qualified to testify at trial as a nonsimilar health care provider pursuant to General Statutes § 52-184c (d).

[5] On May 27, 2008, the hospital moved to dismiss count four of the plaintiff's complaint because it sounded in vicarious liability for the alleged negligence of Lohse, and the counts against Lohse had been dismissed. On September 29, 2008, the court granted the hospital's motion to dismiss. On October 15, 2008, the plaintiff amended his appeal to challenge the court's dismissal of count four against the hospital. Because there is still a viable count against the hospital, namely, count three of the plaintiff's complaint, there is no final judgment as to the hospital. See Practice Book § 61-3; *Craig* v. *Driscoll*, 64 Conn. App. 699, 703 n.4, 781 A.2d 440 (2001), aff'd, 262 Conn. 312, 813 A.2d 1003 (2003). Accordingly, the plaintiff's appeal as to the court's dismissal of the fourth count against the hospital must be dismissed. See *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983).

On appeal, the plaintiff claims that because he attached to his complaint both a good faith certificate from his attorney and an opinion letter from a similar health care provider, his complaint was not subject to dismissal pursuant to § 52-190a (c). The plaintiff asserts that the dismissal sanction in § 52-190a (c) applies only in those instances in which the plaintiff fails to attach a good faith certificate and an opinion letter to his or her complaint. This contention gives rise to the question of when the sufficiency or validity of an opinion letter may properly be attacked. The plaintiff also claims that he did comply with § 52-190a (a) because his opinion letter was authored by a physician who comported with the requirements of § 52-184c (d) and that it was sufficiently detailed.

We begin by noting the well established standard of review on a challenge to a ruling on a motion to dismiss. "When the facts relevant to an issue are not in dispute, this court's task is limited to a determination of whether, on the basis of those facts, the trial court's conclusions of law are legally and logically correct." (Internal quotation marks omitted.) *Tellar* v. *Abbott Laboratories, Inc.*, 114 Conn. App. 244, 249, 969 A.2d 210 (2009). Because there is no dispute regarding the basic material facts, this case presents an issue of law, and we exercise plenary review. See id. Similarly, the meaning of a statute is a question of law over which our review is plenary. *State* v. *Peters*, 287 Conn. 82, 87, 946 A.2d 1231 (2008).

When we interpret a statute, "[o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other

statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Southern New England Telephone Co.* v. *Cashman*, 283 Conn. 644, 650–51, 931 A.2d 142 (2007).

In establishing the requirements of the prelitigation opinion letter, § 52-190a (a) specifically requires that the opinion be authored by a similar health care provider as defined in § 52-184c. Thus, in resolving the issues presented in this appeal, we must examine both statutes. We begin with a review of § 52-190a. Section 52-190a (a) provides that before filing a personal injury action against a health care provider, a potential plaintiff must make "a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. . . ." To show good faith, the complaint, initial pleading or apportionment complaint is required to contain a certificate of the attorney or party filing the action stating that "such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant . . . ." General Statutes § 52-190a (a). Prior to its amendment in 2005 by Public Acts 2005, No. 05-275, § 2 (P.A. 05-275), the statute did not require a plaintiff to include with the complaint a written opinion of a similar health care provider attesting to a good faith basis for an action.

Effective October 1, 2005, the statute was amended by P.A. 05-275 to require, to demonstrate good faith, that plaintiffs or their counsel, prior to filing suit, "shall obtain a written and signed opinion of a similar health care provider . . . that there appears to be evidence of medical negligence and includes a detailed basis for the formation of such opinion. . . ." General Statutes § 52-190a (a). The amended statute also provides that plaintiffs or their counsel "shall attach a copy of such written opinion, with the name and signature of the similar health care provider expunged, to such certificate. . . ." General Statutes § 52-190a (a). Subsection (c) of § 52-190a, which was added by P.A. 05-275, § 2, provides that "[t]he failure to obtain and file the written opinion required by subsection (a) of this section shall be grounds for the dismissal of the action."

Thus, the main differences between the 2005 revision and the present version of the statute are that the 2005 revision did not require the plaintiff to obtain a written opinion from a similar health care provider prior to filing the action or to attach a written opinion to the certificate. Nor, of course, did it contain a remedy for a plaintiff's failure to do so. The written opinion now required, like the certificate, provides the defendant with some evidence that the plaintiff conducted an inquiry prior to filing the complaint and that the inquiry gave the plaintiff a good faith belief that the defendant was negligent. As this court held in *Rios* v. *CCMC Corp.*, 106 Conn. App. 810, 822, 943 A.2d 544 (2008), "[t]he plain language of [§ 52-190a (c)] . . . expressly provides for dismissal of an action when a plaintiff fails to attach a written opinion of a similar health care provider to the complaint, as required by § 52-190a (a)." See also *Votre* v. *County Obstetrics & Gynecology Group, P.C.*, 113 Conn. App. 569, 582, 966 A.2d 813, cert. denied, 292 Conn. 911, 973 A.2d 661 (2009).

Lohse invites us to construe the dismissal provision of § 52-190a (c) to include opinion letters, which, although attached to the complaint, are inadequate or insufficient. He contends that the plaintiff's complaint properly was dismissed because the opinion letter was not authored by a similar health care provider pursuant to § 52-184c and that it was not sufficiently detailed because it did not specifically mention him. The plaintiff, in response, contends that because § 52-190a (c) does not explicitly indicate that an insufficient opinion is a ground for dismissal of an action, only the lack of an opinion letter renders a complaint subject to dismissal. In support of his claim, the plaintiff notes that "[t]he underlying purpose of the legislature in enacting . . . § 52-190a was to discourage the filing of baseless lawsuits against health care providers." See *Gabrielle* v. *Hospital of St. Raphael*, 33 Conn. App. 378, 383, 635 A.2d 1232, cert. denied, 228 Conn. 928, 640 A.2d 115 (1994). "The purpose of the certificate is to evidence a plaintiff's good faith derived from the precomplaint inquiry. It serves as an assurance to a defendant that a plaintiff has in fact made a reasonable precomplaint inquiry giving him a good faith belief in the defendant's negligence." *LeConche* v. *Elligers*, 215 Conn. 701, 711, 579 A.2d 1 (1990).

Although *Gabrielle* and *LeConche* were premised on an earlier version of the statute, the plaintiff asserts that they are nevertheless instructive on the issue presently before us because the requirement that a medical opinion be attached to the attorney's good faith certificate is in furtherance of the same public policy goal of ensuring that a reasonable inquiry into the merits of the claim has been made. Here, the plaintiff contends that the certification and the opinion letter serve as evidence that he has, in fact, made a reasonable precomplaint inquiry giving him a good faith basis to believe that Lohse was negligent.

The plaintiff's policy argument, however, is trumped by the plain language of § 52-190a (c). Section 52-190a (c) provides: "The failure to obtain and file the written opinion *required by subsection (a) of this section* shall be grounds for the dismissal of the action." (Emphasis added.) A plain reading of this subsection indicates that the letter must comply with subsection (a) to avoid potential dismissal. Thus, an action is subject to dismissal under subsection (c) if the opinion letter is not from a similar health care provider or does not give a detailed basis for the opinion.[6]

We now turn to Lohse's claim that the opinion letter submitted by the plaintiff was not authored by a similar health care provider as defined in § 52-184c.[7] Lohse

[6] We note that our Supreme Court recently decided *Dias* v. *Grady*, 292 Conn. 350, 972 A.2d 715 (2009). Although *Dias* does not explicitly address the issue of whether an inadequate opinion letter would subject an action to dismissal, the court appears to have answered that question in the affirmative by reason of the fact that the court reached the merits of the defendant's claim.

[7] General Statutes § 52-184c provides: "(a) In any civil action to recover damages resulting from personal injury or wrongful death occurring on or after October 1, 1987, in which it is alleged that such injury or death resulted from the negligence of a health care provider, as defined in section 52-184b, the claimant shall have the burden of proving by the preponderance of the evidence that the alleged actions of the health care provider represented a breach of the prevailing professional standard of care for that health care provider. The prevailing professional standard of care for a given health care provider shall be that level of care, skill and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers.

"(b) If the defendant health care provider is not certified by the appropriate American board as being a specialist, is not trained and experienced in a medical specialty, or does not hold himself out as a specialist, a 'similar health care provider' is one who: (1) Is licensed by the appropriate regulatory agency of this state or another state requiring the same or greater qualifications; and (2) is trained and experienced in the same discipline or school of practice and such training and experience shall be as a result of the active involvement in the practice or teaching of medicine within the five-year period before the incident giving rise to the claim.

"(c) If the defendant health care provider is certified by the appropriate American board as a specialist, is trained and experienced in a medical specialty, or holds himself out as a specialist, a 'similar health care provider'

claims that the letter fails to comply with the requirements of § 52-190a (a) because it was not authored by a similar health care provider.[8] The plaintiff claims that he complied with § 52-190a (a) because his expert meets the requirements of § 52-184c (d). We agree with Lohse.

To interpret the requirements of § 52-190a (a), we must read it together with § 52-184c, the statute regarding similar health care providers. Subsections (b) and (c) of § 52-184c define a "similar health care provider" for purposes of the statute. For physicians who are board certified or hold themselves out as specialists, subsection (c) of § 52-184c defines "similar health care provider" as "one who: (1) [i]s trained and experienced in the same specialty; and (2) is certified by the appropriate American board in the same specialty . . . ."[9] This definition fits the facts at hand. Thus, pursuant to the plain language of §§ 52-190a (a) and 52-184c (c), a "similar health care provider" with respect to Lohse

is one who: (1) Is trained and experienced in the same specialty; and (2) is certified by the appropriate American board in the same specialty; provided if the defendant health care provider is providing treatment or diagnosis for a condition which is not within his specialty, a specialist trained in the treatment or diagnosis for that condition shall be considered a 'similar health care provider'.

"(d) Any health care provider may testify as an expert in any action if he: (1) Is a 'similar health care provider' pursuant to subsection (b) or (c) of this section; or (2) is not a similar health care provider pursuant to subsection (b) or (c) of this section but, to the satisfaction of the court, possesses sufficient training, experience and knowledge as a result of practice or teaching in a related field of medicine, so as to be able to provide such expert testimony as to the prevailing professional standard of care in a given field of medicine. Such training, experience or knowledge shall be as a result of the active involvement in the practice or teaching of medicine within the five-year period before the incident giving rise to the claim."

[8] Lohse also claims that the plaintiff's opinion letter was deficient in that it did not specifically mention him. Because we conclude that the court properly dismissed the plaintiff's complaint on the ground that the letter was not authored by a similar health care provider, we need not address this claim.

[9] Subsection (b) of § 52-184c pertains to those defendants who are not board certified or do not hold themselves out as specialists.

would be one who is trained and experienced in emergency medicine *and* is certified in emergency medicine. Accordingly, before bringing an action alleging medical negligence on Lohse's part, the plaintiff or his attorney must obtain and file a written and signed opinion from such a physician that there appears to be evidence of such negligence. Because the plaintiff's expert is not certified in emergency medicine, he does not fall within the statutory definition of a similar health care provider as set forth in § 52-184c (c).

The plaintiff contends, however, that in seeking to define "similar health care provider" as it is contemplated in § 52-190a (a), we must consider § 52-184c in its entirety and that, although his expert is not a similar health care provider pursuant to subsections (b) or (c) of § 52-184c, his expert is qualified to testify as to the standard of care pursuant to subsection (d) and should, therefore, be permitted to author an opinion letter that fulfills the requirements of § 52-190a (a). After defining "similar health care provider[s]" in subsections (b) and (c), § 52-184c (d) goes on to provide in relevant part: "Any health care provider may testify as an expert in any action if he: (1) [i]s a 'similar health care provider' pursuant to subsection (b) or (c) of this section; or (2) is not a similar health care provider pursuant to subsection (b) or (c) of this section but, to the satisfaction of the court, possesses sufficient training, experience and knowledge as a result of practice or teaching in a related field of medicine, so as to be able to provide such expert testimony as to the prevailing professional standard of care in a given field of medicine. . . ."

The parties do not dispute that, pursuant to § 52-184c (d), a nonsimilar health care provider may testify at trial so long as the witness is qualified to do so. Lohse contends, however, that, by its own language, subsection (d) pertains to those witnesses who are *not* similar health care providers and, therefore, do not meet the

requirements of § 52-190a (a) because such an expert is not a statutorily defined similar health care provider. In response, the plaintiff argues that it would be absurd to interpret § 52-190a (a) as setting a higher bar for an expert authoring a prelitigation opinion letter than one who is testifying at trial. In other words, the plaintiff claims that if an expert is sufficiently qualified to testify as to the standard of care at trial, then that expert should be permitted to author an opinion letter. The plaintiff contends that his expert is qualified to opine on the standard of care of an emergency room physician and, thus, adequately fulfills the gatekeeper function of the certificate of good faith.

At first blush, the plaintiff's position appears to have merit, particularly in light of the statutory scheme and its underlying purpose of ensuring good faith in the filing of malpractice actions. The plain language of the statute, however, belies the plaintiff's policy argument. Section 52-184c (d) specifically addresses those experts who are *not* similar health care providers. If the legislature intended to include this category of health care providers within the parameters of § 52-190a (a), it easily could have done so. For example, the legislature could have allowed opinion letters to be authored by a "qualified health care provider," thereby allowing either similar or nonsimilar health care providers to author opinion letters in compliance with § 52-190a (a). Rather, when establishing the guidelines for the opinion letter, the legislature clearly and unambiguously referred to a "similar health care provider." By the plain language of the statutes, as to a defendant health care provider who is a physician,[10] the similar health care provider

___

[10] In resolving the issues presented in this appeal, we need not address medical malpractice claims against institutional defendants. We note, however, that there may be a gap in § 52-190a regarding such defendants appropriate for the legislature to address because this is an area that, to the extent possible, should be addressed by specific statutory language rather than by judicial interpretation. See *Finan* v. *Finan*, 287 Conn. 491, 501 n.7, 949 A.2d 468 (2008).

contemplated in § 52-190a (a) is one defined in either subsection (b) or (c) of § 52-184c.

We agree that it may seem incongruous that a physician whose qualifications do not strictly mirror the applicable definitions of a similar health care provider may testify at trial as an expert as to the prevailing professional standard of care pursuant to § 52-184c (d) but may not provide a prelitigation opinion for the purposes of satisfying the § 52-190a requirement. We further agree that, arguably, § 52-190a sets the bar higher to get into court than to prevail at trial. Although this result may be harsh to would-be plaintiffs, we cannot conclude that it is absurd or unworkable. Section 52-184c (d) affords the court discretion in determining whether an expert may testify, while § 52-190a establishes objective criteria, not subject to the exercise of discretion, making the prelitigation requirements more definitive and uniform. "Where the language of the statute is clear and unambiguous, we have refused to speculate as to the legislative intention, because it is assumed that the words express the intention of the legislature." (Internal quotation marks omitted.) *State* v. *Snook*, 210 Conn. 244, 267, 555 A.2d 390, cert. denied, 492 U.S. 924, 109 S. Ct. 3258, 106 L. Ed. 2d 603 (1989). We are, therefore, bound by the plain language of the statute. To the extent that the plaintiff's claims raise legitimate policy concerns that warrant a different outcome, it is the role of the legislature, not this court, to address those policy considerations.[11]

---

[11] *Dias* v. *Grady*, 292 Conn. 350, 972 A.2d 715 (2009), contains language that, out of its context, provides support for both parties' positions in the case at hand. In *Dias*, the defendants claimed that the term "negligence" in § 52-190a imported the broad notion of negligence to include causation. Id., 353–54. The court disagreed, finding rather that the term in the context of § 52-190a related only to a breach of the standard of care. Id., 359. The court in *Dias* concluded that acceptance of the broad construction of the term "negligence" urged by the defendants would result in an absurdity on the basis of its conclusion that often similar health care providers are not able to opine regarding causation even though they are competent to address the question of appropriate care. Id., 361. The court observed that "there

On the basis of the foregoing, because the opinion letter submitted by the plaintiff was not authored by a similar health care provider, the court properly dismissed the counts against Lohse.

The appeal is dismissed with respect to the hospital for lack of a final judgment. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

is no statutory mechanism by which a plaintiff can introduce the written opinion of a nonsimilar health care provider regarding causation. Accordingly, a requirement that the plaintiff attach a written opinion of a similar health care provider that there appears to be evidence of proximate causation would, in many cases, be an insurmountable obstacle to bringing an action." Id., 359. We glean from this language that the Supreme Court has determined, albeit obliquely, that § 52-190a requires that an opinion letter be written by a similar health care provider.

On the other hand, the court also stated that "requiring a similar health care provider to give an opinion as to causation at the prediscovery stage of litigation pursuant to § 52-190a when a similar health care provider is not required to give such an opinion at trial pursuant to § 52-184c would bar some plaintiffs who could prevail at trial from even filing a complaint. Because this would be a bizarre result, we reject this claim." Id., 361. Although the plaintiff here could argue that it would be equally bizarre if a physician whose qualifications do not meet the applicable definitions of a similar health care provider could testify at trial as an expert as to the prevailing professional standard of care pursuant to § 52-184c (d) but, nevertheless, may not provide a prelitigation opinion for the purposes of satisfying the § 52-190a requirement, the distinction between this case and *Dias* is that an interpretation of the plain language of § 52-190a as applied here does not lead to an absurd result. The requirement that a similar health care provider be the author of the opinion letter contemplated by § 52-190a does not present a bar to the courthouse even though it may create a hurdle

greater than that required to get to the jury once entry to the courthouse has been secured.