******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

NANCY HELFANT, EXECUTRIX (ESTATE OF IRWIN
HELFANT), ET AL. *v.* YALE-NEW
HAVEN HOSPITAL ET AL.
(AC 37569)

Alvord, Prescott and West, Js.

*Argued March 1—officially released September 6, 2016*

(Appeal from Superior Court, judicial district of New
Haven, Wilson, J.)

*John T. Bochanis*, for the appellants (plaintiffs).

*S. Peter Sachner*, with whom, on the brief, was *Amy
F. Goodusky*, for the appellees (defendant Middlesex
Hospital et al.).

*Opinion*

WEST, J. The plaintiff, Nancy Helfant, in her capacity as the executrix of the estate of Irwin Helfant, the decedent, and in her individual capacity,[1] brought this medical negligence action against the defendants, Middlesex Hospital,[2] Middlesex Hospital Shoreline Medical Center, Yale-New Haven Hospital, and the agents, servants, and employees of these institutions, and against John Lynch and Henry Cabin, both physicians, individually.[3] The plaintiff appeals from the judgment of the trial court dismissing the action on the ground that the plaintiff failed to satisfy General Statutes § 52-190a[4] by filing a written opinion of a similar health care provider that there appears to be negligence on the part of the defendants. The plaintiff claims that the court improperly determined that the opinion letter filed in the present case failed to demonstrate that the author of the letter was a similar health care provider as defined by General Statutes § 52-184c.[5] Because we conclude that the opinion letter submitted by the plaintiff was not from a similar health care provider, we affirm the judgment of the trial court.

The record discloses the following relevant procedural history. The plaintiff filed a complaint against the defendants on March 20, 2008, and a revised complaint on November 12, 2008, in which she, in her capacity as executrix, asserted a wrongful death claim on the basis of the defendants' medical malpractice. In her revised complaint, the plaintiff alleged the following facts, the truth of which we assume for purposes of her appeal. On December 5, 2005, the plaintiff's decedent was admitted for treatment by Lynch at Middlesex Hospital Shoreline Medical Center, was subsequently transferred to Yale-New Haven Hospital, where Cabin rendered care, and the decedent later died.

The plaintiff alleged that the decedent's death was caused by the negligence, carelessness, and breach of the duty of care of the institutional defendants through their agents, servants, and employees.[6] The plaintiff also alleged that the decedent's death was caused by the negligence, carelessness, and breach of the duty of care of the defendant physicians, Lynch and Cabin.[7] Furthermore, the plaintiff alleged that as a result of the breach of the duty of care by the defendants, the decedent died on December 5, 2005. The plaintiff additionally alleged that as a result the decedent sustained pain and suffering, incurred various medical care, funeral, and burial expenses, and lost his capacity to earn wages and carry out life's activities. Additionally, the plaintiff, in her individual capacity, alleged that as a result of the defendants' breach of the duty of care owed the decedent, she suffered a loss of companionship, support, love and consortium with her husband, the decedent.

Attached to the complaint was a good faith certificate

signed by the plaintiff's attorney. The plaintiff's attorney represented therein that, following a reasonable inquiry by him, he believed in good faith that grounds existed for a medical malpractice action against the defendants. Additionally, the plaintiff attached a document entitled "Medical Evaluation Report" authored by Robert Pieroni, a physician. The letter stated in relevant part: "The communication between Doctors Lynch and Cabin and agents of their hospitals was frankly abysmal, and their actions and inactions in their 'treatment' of [the decedent] were distinctly substandard."[8] The opinion letter set forth the specific facts related to the decedent's condition at the time he arrived at Middlesex Hospital Shoreline Medical Center. Additionally, the letter delineated the ways in which the defendants failed to provide adequate or appropriate care, which allegedly led to the decedent's demise. The letter's stationary indicated that Pieroni was certified as a specialist by various American boards of medicine, however, a specialty of emergency medicine was not one of the many listed.

Thereafter, the defendants moved to dismiss the plaintiff's revised complaint on the grounds that the opinion letter submitted by the plaintiff did not comply with § 52-190a, because it was not authored by a "similar health care provider," and that it was insufficiently detailed in that it did not provide for how the defendants deviated from the standard of care. In support of their motion to dismiss, the defendants submitted as an exhibit an affidavit executed by Lynch. In the affidavit Lynch averred that he "[was] an emergency room physician . . . and [had] been board certified by the American Board of Emergency Medicine since June 18, 2004."

The plaintiff filed an objection to the motion and attached as exhibits an affidavit made by the opinion letter author, Pieroni, as well as his curriculum vitae. In the affidavit, Pieroni averred that he "previously and currently [performs] physician responsibilities in a hospital emergency room department and [has] experience in providing emergency medical care." Pieroni further stated that he "[had] been previously called upon to assist emergency room physicians in the diagnosis and treatment of patients . . . ." He also declared that "[a]s a board certified physician in internal medicine, family medicine, and other specialty areas, [he had] been trained to perform medical diagnosis and treatment in different settings including emergency department settings . . . ."

On October 5, 2009, the trial court, *Wilson, J.*, entered an order sustaining the plaintiff's objection to the defendants' motion to dismiss. Subsequently, the defendants filed a motion to reargue their motion to dismiss, citing, inter alia, *Bennett* v. *New Milford Hospital, Inc.*, 117 Conn. App. 535, 979 A.2d 1066 (2009), aff'd, 300 Conn. 1, 12 A.3d 865 (2011). The court later granted the defendants' motion to reargue, vacated its order of October

5, 2009, and heard reargument on the defendants' motion to dismiss. In an April 6, 2010 memorandum of decision, the court granted the defendants' motion to dismiss.

The court summarized the key arguments advanced by the parties as follows: "[Lynch] argue[d] that the plaintiff's complaint must be dismissed pursuant to § 52-190a (c) because the author of the plaintiff's opinion letter [was] not a 'similar health care provider' as defined by § 52-184c (c). [He] further [contended] that the letter [was] not sufficiently detailed to allege medical negligence, in that it neither [stated] a standard of care nor [illustrated] how [he] breached that standard. Lastly, [Lynch argued] that the letter [was] conclusory in its entirety.

"The plaintiff [countered] that § 52-190a (c) provides for dismissal only where a plaintiff neglects to attach an opinion letter to a complaint. In addition, she [argued] that the opinion author is a similar health care provider because he has sufficient experience in the field of emergency medicine, which is unlike other medical specialties in that it is defined solely by the setting in which the care is rendered. The plaintiff further [argued] that the sufficiency of the detail of a medical opinion letter is not properly raised in a motion to dismiss; and that, if the court [were to find] that it is, the letter is sufficiently detailed.

"The plaintiff filed a supplemental objection to the defendants' motion to dismiss, in which she [countered], inter alia, that the care rendered by [Lynch] was outside of his specialty. Therefore, the plaintiff [contended] that the opinion letter author [Pieroni] is a similar medical provider under § 52-184c (c), although [Pieroni] is not board certified in emergency medicine. In reply, the defendants [asserted] that *Bennett* [v. *New Milford Hospital, Inc.*, supra, 117 Conn. App. 535,] still controls this issue, focusing on [Lynch's] board certification relative to that of [Pieroni]. The defendants also [argued] in reply that the substance of the letter at issue is lacking, and that it is deficient as against the institutional defendants . . . ."

The trial court concluded that this court's decision in *Bennett v. New Milford Hospital, Inc.*, supra, 117 Conn. App. 535, was "controlling as to the validity of the opinion letter as against [Lynch]." The court noted that "[n]owhere in the record is there any indication that [Pieroni] is board certified in emergency medicine." The court concluded, therefore, that "since [Lynch] is board certified in emergency medicine, §§ 52-190a (a) and 52-184c (c) require that a similar health care provider be board certified in emergency medicine." The court further concluded that "[u]nder the standard set forth in *Bennett*, and § 52-190a (a), the letter cannot be determined to have been authored by a similar health care provider."[9] Accordingly, the court granted the

defendants' motion to dismiss pursuant to § 52-190a (c) inasmuch as it related to Lynch.

The court separately addressed "whether the opinion letter, although insufficient as to [Lynch] [remained] sufficient as against the institutional defendants . . . ." Noting that the plaintiff's revised complaint alleged vicarious liability against only the institutional defendants for the negligent conduct of Lynch as their agent, the court concluded that because it found the opinion letter deficient as offered against Lynch individually, it must follow that it was also deficient as against the institutional defendants as Lynch's principals.

"We begin by noting the well established standard of review on a challenge to a ruling on a motion to dismiss. When the facts relevant to an issue are not in dispute, this court's task is limited to a determination of whether, on the basis of those facts, the trial court's conclusions of law are legally and logically correct. . . . Because there is no dispute regarding the basic material facts, this case presents an issue of law, and we exercise plenary review. . . . Similarly, the meaning of a statute is a question of law over which our review is plenary." (Citations omitted; internal quotation marks omitted.) *Bennett* v. *New Milford Hospital, Inc.*, supra, 117 Conn. App. 541.

On appeal, the plaintiff claims that the court improperly dismissed the action on the ground that the opinion letter was not authored by a similar health care provider. The plaintiff argues that the opinion letter complies with § 52-190a, and, therefore, is sufficient to support a claim against Lynch and the institutional defendants. Thus, the plaintiff asserts that the dismissal of the action was unwarranted. The defendants claim that the court properly applied the holding of *Bennett* in concluding that the opinion letter's author did not meet the objective standard imposed by § 52-190a, requiring that the attesting expert be a similar health care provider to Lynch.

General Statutes § 52-190a (a) provides in relevant part that "[n]o civil action or apportionment complaint shall be filed to recover damages resulting from personal injury or wrongful death occurring on or after October 1, 1987, whether in tort or in contract, in which it is alleged that such injury or death resulted from the negligence of a health care provider, unless . . . the claimant or the claimant's attorney, . . . obtain[s] a written and signed opinion of a similar health care provider, as defined in section 52-184c, which similar health care provider shall be selected pursuant to the provisions of said section, that there appears to be evidence of medical negligence and includes a detailed basis for the formation of such opinion. . . ."

"To interpret the requirements of § 52-190a (a), we must read it together with § 52-184c, the statute regard-

ing similar health care providers. Subsections (b) and (c) of § 52–184c define a 'similar health care provider' for purposes of the statute. For physicians who are board certified or hold themselves out as specialists, subsection (c) of § 52-184c defines 'similar health care provider' as 'one who: (1) [i]s trained and experienced in the same specialty; and (2) is certified by the appropriate American board in the same specialty . . . .'" *Bennett* v. *New Milford Hospital, Inc.*, supra, 117 Conn. App. 546.

Because Lynch is certified by the American Board of Emergency Medicine, is trained and experienced in emergency medicine, and holds himself out as a specialist, pursuant to the plain language of §§ 52-190a (a) and 52-184c (c), a "similar health care provider" with respect to Lynch would be a physician who is not only trained and experienced in emergency medicine, but one who is also "certified by the appropriate American board" in emergency medicine. General Statutes § 52-184c (c). Accordingly, before bringing an action alleging medical negligence on Lynch's part, the plaintiff or her attorney needed to obtain and file a written and signed opinion from such a physician indicating that there appears to be evidence of such negligence. Because the plaintiff's expert is not board certified in emergency medicine, he does not fall within the statutory definition of a similar health care provider as set forth in § 52-184c (c).

The plaintiff, citing § 52-184c (c), contends that the opinion letter author is a similar health care provider for purposes of § 52-190a, even if his board certification is not in the exact same certification as that of Lynch. The plaintiff argues that the exception contained in § 52-184c (c)[10] is applicable because Lynch was not providing treatment to the decedent solely within his claimed specialty of emergency medicine. Specifically, the plaintiff notes that Lynch's diagnosis and treatment of the decedent's condition—air in the chest cavity—was not caused by any trauma and, thus, was a condition outside of his emergency medicine specialty. The plaintiff also relies on the fact that she did not assert any allegations in the complaint based on Lynch's specialization in emergency medicine, and further argues that the facts of this case are different than those in *Bennett*. The plaintiff contends that this case, therefore, is distinguishable from *Bennett* simply because the plaintiff in *Bennett* alleged that the defendant physician was specialized in emergency medicine, whereas the plaintiff in this case did not. She asserts that by not alleging that Lynch was acting within his medical specialty of emergency medicine while negligently treating the decedent, the exception in § 52-184c (c), regarding providing treatment or diagnosis for a condition not within a provider's specialty, applies.

It is important to note, however, that the plaintiff

did not allege in her revised complaint that Lynch was acting outside of his medical specialty when he rendered treatment to the decedent. Furthermore, the plaintiff did not restrict her claims against Lynch to properly interpreting a chest X-ray. Rather, the revised complaint alleges that Lynch failed to take a proper history of the decedent, properly diagnose, and conduct the proper diagnostic testing on the decedent, which would fall within the specialty of emergency medicine. See footnotes 5 and 6 of this opinion. Moreover, the plaintiff essentially is arguing that merely by omitting language regarding Lynch's specialty, the exception in § 52-184c (c) applies; however, if that assertion were accepted, it would seem that by omitting such language regarding a defendant's specialty, a plaintiff could always plead his or her way around the statute. Additionally, even if the plaintiff's proposition that the alleged negligence of Lynch was limited to the improper interpretation of a chest X-ray were accepted, this act would not appear to fall outside of his field of specialization as a board certified emergency medicine physician. Indeed, there were no facts alleged in the revised complaint to demonstrate that the interpretation of X-rays falls outside the purview of the emergency medicine specialty. The fact that Lynch was interpreting the chest X-ray in an emergency room setting also leads us to the conclusion that it was within his specialty of emergency medicine.

In *Farrell* v. *Bass*, 90 Conn. App. 804, 812–13, 879 A.2d 516 (2005), this court upheld the trial court's finding that a plastic surgeon's direction to his patient to discontinue taking the medication Coumadin, a blood thinner, for two days prior to surgery was not sufficient to conclude that the plastic surgeon was providing treatment or diagnosis for a condition which is not within his specialty, as stated in § 52-184c (c). The trial court had concluded that any direction to the patient to discontinue Coumadin for a time was given in the physician's role as a plastic surgeon. Id., 814. Similarly, in this case, Lynch's interpretation of the decedent's X-ray was done within his role as an emergency medicine physician rendering treatment in an emergency room setting. Thus, we conclude that Lynch was not providing treatment or diagnosis for a condition that was not within his specialty and, therefore, the exception in § 52-184c (c) does not apply to the facts of this case. Accordingly, pursuant to §§ 52-190a (a) and 52-184c (c), the plaintiff's medical opinion letter should have been authored by a physician who is both trained and experienced and board certified in emergency medicine.

Additionally, the plaintiff contends that the medical opinion letter was sufficient to support a claim against the institutional defendants; however, as the trial court concluded, the plaintiff did not allege that the liability of the institutional defendants arose from anything other than vicarious liability for the negligent conduct of

Lynch as their agent. The plaintiff cites several Superior Court cases to support the proposition that a written opinion that addresses only the negligence of the physicians is sufficient to withstand a motion to dismiss in an action in which the alleged medical malpractice of a hospital or similar entity is premised on the conduct of its individual physicians, employees, or staff. The plaintiff argues that the fact that Lynch was the only agent specifically named in the complaint does not limit the allegations in the complaint against the institutional defendants to just his negligent acts and argues that because they alleged negligence on the part of the institutional defendants' "agents, servants, and employees," the written opinion letter authored by Pieroni is sufficient to support a claim against those defendants.

Our Supreme Court in *Wilkins* v. *Connecticut Childbirth & Women's Center*, 314 Conn. 709, 727, 104 A.3d 671 (2014), concluded that, under certain circumstances, an opinion letter from a *properly qualified physician* in support of a complaint may also support allegations directed against subordinate providers practicing in the same medical specialty. In the present case, however, because Pieroni was not properly qualified to author the opinion letter as against Lynch, the letter would not support allegations directed at any subordinate providers whose negligence would be imputed to the institutional defendants. Accordingly, because we conclude that the medical opinion letter was insufficient as offered against Lynch, we conclude that it was insufficient as against the institutional defendants as well.

On the basis of the foregoing, because the opinion letter submitted by the plaintiff was not authored by a similar health care provider pursuant to §§ 52-190a (a) and 52-184c (c), we conclude that the court properly dismissed the action.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] We refer in this opinion to Nancy Helfant in both capacities as the plaintiff.

[2] Middlesex Hospital maintained and operated a public hospital in the city of Middletown and state of Connecticut known as Middlesex Hospital, and in the town of Essex, known as Middlesex Hospital Shore Line Medical Center.

[3] The plaintiff resolved her case against Yale-New Haven Hospital and Henry Cabin prior to filing this appeal. Therefore, the remaining defendants in this appeal, Middlesex Hospital, Middlesex Hospital Shoreline Medical Center, and John Lynch, will be referred to collectively as the defendants, and individually by name when appropriate. The defendants Middlesex Hospital and Middlesex Hospital Shoreline Medical Center will be collectively referred to as the institutional defendants.

[4] General Statutes § 52-190a provides in relevant part: "(a) No civil action or apportionment complaint shall be filed to recover damages resulting from personal injury or wrongful death occurring on or after October 1, 1987, whether in tort or in contract, in which it is alleged that such injury or death resulted from the negligence of a health care provider, unless the attorney or party filing the action or apportionment complaint has made a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or

treatment of the claimant. The complaint, initial pleading or apportionment complaint shall contain a certificate of the attorney or party filing the action or apportionment complaint that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant or for an apportionment complaint against each named apportionment defendant. To show the existence of such good faith, the claimant or the claimant's attorney, and any apportionment complainant or the apportionment complainant's attorney, shall obtain a written and signed opinion of a similar health care provider, as defined in section 52-184c, which similar health care provider shall be selected pursuant to the provisions of said section, that there appears to be evidence of medical negligence and includes a detailed basis for the formation of such opinion. . . .

* * *

"(c) The failure to obtain and file the written opinion required by subsection (a) of this section shall be grounds for the dismissal of the action."

[5] General Statutes § 52-184c provides in relevant part: "(a) In any civil action to recover damages resulting from personal injury or wrongful death occurring on or after October 1, 1987, in which it is alleged that such injury or death resulted from the negligence of a health care provider, as defined in section 52-184b, the claimant shall have the burden of proving by the preponderance of the evidence that the alleged actions of the health care provider represented a breach of the prevailing professional standard of care for that health care provider. The prevailing professional standard of care for a given health care provider shall be that level of care, skill and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers.

"(b) If the defendant health care provider is not certified by the appropriate American board as being a specialist, is not trained and experienced in a medical specialty, or does not hold himself out as a specialist, a 'similar health care provider' is one who: (1) Is licensed by the appropriate regulatory agency of this state or another state requiring the same or greater qualifications; and (2) is trained and experienced in the same discipline or school of practice and such training and experience shall be as a result of the active involvement in the practice or teaching of medicine within the five-year period before the incident giving rise to the claim.

"(c) If the defendant health care provider is certified by the appropriate American board as a specialist, is trained and experienced in a medical specialty, or holds himself out as a specialist, a 'similar health care provider' is one who: (1) Is trained and experienced in the same specialty; and (2) is certified by the appropriate American board in the same specialty; provided if the defendant health care provider is providing treatment or diagnosis for a condition which is not within his specialty, a specialist trained in the treatment or diagnosis for that condition shall be considered a 'similar health care provider'. . . ."

[6] The plaintiff alleged that the defendant hospitals breached their duties in the following ways:

"(a) In that [they] failed to use the care and skill ordinarily used by hospitals in the state of Connecticut.

"(b) In that [their] agents, servants and/or employees failed to properly diagnose and treat the [decedent] while he was a patient in the defendants' hospitals.

"(c) In that [their] agents, servants and/or employees failed to take a proper history of the decedent;

"(d) In that [their] agents, servants and/or employees failed to properly diagnose the decedent's condition;

"(e) In that [their] agents, servants and/or employees failed to conduct proper diagnostic testing of the decedent's condition;

"(f) In that [their] agents, servants and/or employees failed to properly monitor the decedent's condition;

"(g) In that [their] agents, servants and/or employees failed to use the proper treatment, care and skills ordinarily used by hospitals in the state of Connecticut."

[7] The plaintiff alleged that the defendant physicians breached their duties in the same ways as articulated against the defendant hospitals.

[8] The full text of the letter read as follows: "I have reviewed in detail, and on several occasions, medical records forwarded to me pertaining to the treatment of Irwin Helfant by [Lynch] and agents of Middlesex Hospital on 10/4/05 and by [Cabin] and agents of Yale-New Haven Hospital until his premature demise on 12/5/05.

"[The decedent] was known to have a history of surgery for esophageal rupture. He presented to Middlesex Hospital Emergency Department with complaints o[f] nausea and vomiting, chest and abdominal pain, shortness of breath, diaphoresis and anorexia. His lab values included normal cardiac enzymes but markedly elevated WBC with a left shift, elevated liver and kidney function tests and an abnormal chest X-ray, with a large area of consolidation.

"Despite the extremely high likelihood that the [decedent] was infected from a repeat esophageal disruption, Doctor Lynch failed to make this diagnosis and transferred [the decedent] to Yale-New Haven Hospital's cardias catheterization lab for further evaluation and intervention by Henry S. Cabin, M.D. and his Yale team, who again failed to appropriately diagnose and treat the [decedent].

"The communication between Doctors Lynch and Cabin and agents of their hospitals was frankly abysmal, and their actions and inactions in their 'treatment' of [the decedent] were distinctly substandard. More likely than not [the decedent] would have survived had he been properly diagnosed and treated."

[9] The court concluded that "[b]ecause [it found] that the opinion letter submitted by the plaintiff was not authored by a 'similar health care provider' as to the institutional defendants, it need not reach the issue of whether the substance [of the] letter [was] sufficient."

[10] The portion of § 52-184c (c) that the plaintiff refers to as the exception states: "[P]rovided if the defendant health care provider is providing treatment or diagnosis for a condition which is not within his specialty, a specialist trained in the treatment or diagnosis for that condition shall be considered a 'similar health care provider.' "