**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5007-18T2

F.J.C.,

    Plaintiff-Respondent,

v.

J.L.C.[1],

    Defendant-Appellant.

_____

        Submitted October 21, 2020 – Decided November 18, 2020

        Before Judges Geiger and Mitterhoff.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Passaic County, Docket No. FM-16-1419-16.

        Law Office of Katherine G. Houghton, attorney for appellant (Nicholas T. Delaney, on the briefs).

        F.J.C., respondent pro se.

PER CURIAM

---

[1] We refer to the parties by initials to protect their privacy pursuant to Rule 1:38-3(d)(10).

Defendant J.L.C., now known as J.K., appeals from a June 4, 2019 Family Part order denying her July 2018 application for a final award of counsel fees and costs in the amount of $86,759.75, which included $8012.50 sought in an undecided pendente lite counsel fee application from August 2017. We vacate and remand.

We summarize the facts and procedural history derived from the record to provide context to the issues raised. The parties were married in October 2011 and have two children, who were born in February 2012 and November 2013, respectively.

In April 2016, plaintiff F.J.C. filed a divorce complaint seeking dissolution of the marriage based on alleged irreconcilable differences and habitual drug use, sole legal and physical custody of the children, child support, equitable distribution of marital property, and counsel fees. Defendant filed an answer and counterclaim that sought a divorce based on alleged extreme physical and mental cruelty and habitual drug use, and personal injury damages for alleged marital torts. Each count also sought an award of counsel fees and costs.

On August 25, 2016, the parties appeared with counsel for an initial pretrial hearing. At the time, plaintiff was a police officer on disability for an

unspecified injury. Defendant was unemployed on disability and recovering from substance abuse.

Plaintiff sought pendente lite custody of the children on the grounds that defendant was undergoing treatment for substance abuse and was living in a sober home. The children were living with plaintiff at his mother's home. Defendant opposed, seeking the return of the children to her parents' home.

Defendant alleged that plaintiff had unresolved anger management problems due to steroid abuse, displayed aggressive behavior, and "committed spousal abuse throughout th[e] marriage." She requested that plaintiff be tested for steroids.

The court granted plaintiff pendente lite custody with supervised parenting time for defendant, concluding it was in the children's best interest to maintain the status quo. Defendant's supervised parenting time consisted of every weekend and one night per week for dinner until plaintiff returned to work; once plaintiff returned to work, defendant's supervised parenting time would change to alternating weekends.

The court noted that the Division of Child Protection and Permanency had recently investigated plaintiff and found no evidence of physical abuse or neglect. The court declined to order plaintiff to be tested for steroids, stating

3

there was insufficient proof to support defendant's allegations. It nevertheless asked plaintiff to provide defendant with the results of drug testing that plaintiff claimed he underwent at work.

The court ordered the parties to exchange discovery by December 12, 2016. Claiming plaintiff was noncompliant, defendant sought to compel production of discovery during a January 30, 2017 telephonic discovery conference.[2] The court extended the discovery to March 26, 2017.

According to defendant, plaintiff remained noncompliant with discovery and failed to provide the steroid test results he claimed he received at work. Defendant subpoenaed the test results from the Haledon Police Department. Lieutenant George Guzman, the Department's Internal Affairs Commander, advised that the department never drug tested defendant for steroids. Consequently, defendant applied for an order to show cause (OTSC), which among other things sought to have plaintiff tested for steroids to substantiate her claims of domestic violence. After plaintiff agreed to be tested, the parties entered into a June 14, 2017 consent order that directed "plaintiff to immediately submit to urine [and] blood testing for steroids, growth hormones and related

_____

[2] Due to a shortage of Family Part judges in Passaic County, litigants were directed to address discovery disputes by phone conferences, not motion practice.

body building drugs."[3] The remaining issues raised in the OTSC, including a request for periodic random future testing, were deferred and converted into a motion. The order also granted defendant unsupervised parenting time every Tuesday.

On June 29, 2017, defendant moved for an award of pendente lite counsel fees and costs in amount of $8012.50, relating to the OTSC and converted motion. Defendant contended she was entitled to a fee award because: (1) plaintiff lied to the court; (2) plaintiff only agreed to undergo steroid testing after evasion and delay that necessitated filing the OTSC; and (3) plaintiff earned $170,000 per year while defendant only earned approximately $25,000 per year.

In support of her motion, defendant submitted: (1) her attorney's certification of services; (2) certifications from defendant and her mother alleging plaintiff abused steroids and displayed violent behavior; (3) a 2011 Report of the Attorney General's Steroids Study Group that concluded some New Jersey law enforcement officers abuse steroids, which can lead to the so-called "steroid rage," domestic violence, and aggressive behavior; (4) paystubs

---

[3] Plaintiff agreed to be tested for the following steroids: Anavar (oxandroline), Ultracut, Trenbolone, Nolvadex, Tomoxifen, and Testosterone; and Sermorelin [acetate], a growth hormone-releasing agonist.

indicating plaintiff's net pay averaged $2342 bi-weekly; (5) paystubs indicating defendant's net pay averaged $859 bi-weekly; (6) defendant's Case Information Statement, 2016 federal tax return, and 2016 W-2s; (7) an agreement for legal services indicating defendant paid an initial retainer of $4,000; and (8) numerous exhibits supporting defendant's position that plaintiff was not complying with court orders and unnecessarily prolonged the litigation.

The motion remained undecided for more than a year. In the meantime, defendant moved to enforce litigant's rights. The motion court issued a January 4, 2019 order granting the motion, which awarded defendant attorney's fees of $3200 and costs of $50 for that application.

The parties divorced on May 15, 2018. The Final judgment of divorce (FJOD) incorporated the terms of the parties' Matrimonial Settlement Agreement (MSA) The FJOD and MSA expressly reserved each parties' right to seek an award of attorney's fees, including defendant's outstanding June 2017 motion for counsel fees.

The court ultimately issued a June 4, 2019 order and written statement of reasons denying plaintiff's motion and defendant's cross-motion for counsel fees and costs. The court noted "[t]his matter was a highly contentious case, spanning over the course of two years, and involving complex issues of custody

and parenting time for the two children, allegations of drug abuse, alcoholism, domestic violence and [Division] involvement," which "led to both parties filing several motions and emergent applications." In declining to award counsel fees, the court addressed the nine factors enumerated in Rule 5:3-5(c) as follows.

As to factor one (financial circumstances of the parties), the court noted the MSA indicated that plaintiff earned $125,000 in 2017 and imputed defendant as earning $40,000 per year. It explained "that while the [p]laintiff's income is substantially higher than that of the [d]efendant's, his expenses are correspondingly higher." The court found "the parties' financial circumstances appear to be relatively comparable; that is, they each had considerable debt/expenses when compared to their respective incomes." The court noted that: pursuant to the judgment of divorce, plaintiff was required to provide defendant with a lump-sum payment of $35,000 for alimony; plaintiff purchased a home while defendant remained living with her parents; plaintiff borrowed additional funds "to fulfill his agreed upon financial obligations under" the FJOD and MSA; and plaintiff's legal fees exceeded $67,000.

As to factor two (the parties' ability to pay their own fees or to contribute to the fees of the other party), the court stated that "[b]oth parties are in relatively similar positions to pay counsel fees." It reiterated that while "[p]laintiff has a

substantially higher income, the [p]laintiff also appears to have substantially higher expenses than the [d]efendant." The court noted that plaintiff proceeded without counsel after he "could no longer continue to pay his own counsel fees." The court found that "[n]either party appears to be financially able to pay their own fees, much less to contribute to the fees of the other party."

As to factor three (the parties' reasonableness/good faith), the court rejected defendant's contention that plaintiff acted in bad faith when he opposed her requested parenting time (noting that defendant was undergoing substance abuse treatment at the time) and when he failed to comply with court orders that required him to undergo steroid testing (noting that he ultimately tested negative). The court found that "the parties negotiated and resolved their differences in good faith, without the need for a [t]rial, and that neither party demonstrated any bad faith on the other's part." The court noted "it was nothing other than the parties' mutual distrust that played an intricate role in the proliferation of litigation in this matter."

As to factor four (extent of the fees incurred by both parties), the court reviewed defendant's counsel's certification of services which indicated that she incurred counsel fees and costs in the amount of $86,759.75 from May 2016 to July 2018. Plaintiff submitted a February 2018 invoice from his former attorney

which indicated an outstanding balance of $68,955 for services rendered from September 2016 to February 2018.

As to factor five (fees previously awarded), the court stated "[n]o fees were ever awarded during the pendency of the litigation[,] [b]oth parties applied for legal fees and costs throughout the pendency of the divorce, but the [c]ourt either denied (Order of 11/3/2017) or reserved (Order of 8/16/17) on their respective applications."

As to factor six (the amount of fees previously paid to counsel by each party), the court found: "Defendant has paid $21,362.50 to date towards her counsel fees. The amount of counsel fees paid by [p]laintiff to his former counsel is unknown."

As to factor seven (results obtained), the court observed that "[a]ll issues asserted by the parties came to resolution primarily through consent orders." It stated that "[s]ignificantly, resolution or finality was accomplished as a result of the parties' voluntary and good faith negotiations which resulted in the parties' MSA that was incorporated into the [F]JOD dated May 15, 2018."

As to factor eight (degree to which fees were incurred to enforce existing orders or to compel discovery), the court found "[a]ll issues presented were brought to resolution by way of consent."

Finally, as to factor nine (other factors bearing upon the fairness of an award), the court rejected the parties' contention that it "should look back to the positions taken by the parties during the pendency of the divorce and find bad faith and award counsel fees to each of them." The court again explained that the high level of conflict between the parties and their mutual distrust of one another led to the contentious divorce litigation. The court concluded that neither party acted in bad faith and denied counsel fees to both parties.

A different judge issued a subsequent July 25, 2019 order that found plaintiff violated litigant's rights by failing to comply with the January 4, 2019 order. Pertinent to this appeal, the court awarded defendant counsel fees of $3533.75. Plaintiff's cross-motion was denied in its entirety.

This appeal followed. Defendant argues that the denial of pendente lite and final counsel fee awards was an abuse of discretion because the judge failed to consider all of the requisite factors set forth in Rule 5:3-5(c) and N.J.S.A. 2A:34-23. She also argues that an award of counsel fees is warranted because plaintiff violated court orders, unnecessarily prolonged the litigation, and is in a superior financial position.

N.J.S.A 2A:34-23 states, in relevant part:

> Whenever any other application is made to a court which includes an application for pendente lite or final

award of counsel fees, the court shall determine the appropriate award for counsel fees, if any, at the same time that a decision is rendered on the other issue then before the court and shall consider the factors set forth in the court rule on counsel fees, the financial circumstances of the parties, and the good or bad faith of either party.

Rule 4:42-9(a)(1), in turn, permits the trial court to award counsel fees in a family action pursuant to Rule 5:3-5(c), which lists nine factors the trial court should consider in determining the amount of the fee award:

(1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.

"The application of these factors and the ultimate decision to award counsel fees rests within the sound discretion of the trial judge." Loro v. Colliano, 354 N.J. Super. 212, 227 (App. Div. 2002) (citing Yueh v. Yueh, 329 N.J. Super. 447, 460 (App. Div. 2000)). "We will disturb a trial court's determination on counsel fees only on the 'rarest occasion,' and then only

11

because of clear abuse of discretion." Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)).

An abuse of discretion occurs when a trial court makes "findings inconsistent with or unsupported by competent evidence," utilizes "irrelevant or inappropriate factors," or "fail[s] to consider controlling legal principles." Elrom v. Elrom, 439 N.J. Super. 424, 434 (App. Div. 2015) (citations omitted). An abuse of discretion is also demonstrated if the court fails to consider "all relevant factors" or its decision "amounts to a clear error in judgment." Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005) (citing Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

We will not disturb the trial court's factual findings unless they are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Ricci v. Ricci, 448 N.J. Super. 546, 564 (App. Div. 2017) (quoting Elrom, 439 N.J. Super. at 433). Challenges to legal determinations are subject to de novo review. Id. at 565 (citing Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)).

On counsel fee applications, the court shall consider "the good or bad faith of either party." N.J.S.A. 2A:34-23. The statute "in unmistakable terms authorizes a trial court to take into consideration the good or bad faith of the

party against whom counsel fees are sought to be assessed." Kothari v. Kothari, 255 N.J. Super. 500, 513 (App. Div. 1992); see also R. 5:3-5(c)(3). A party acts in bad faith when he disregards court orders and fails to make discovery. Yueh, 329 N.J. Super.at 460-61.

The relative economic positions of the parties are less significant if plaintiff acted in bad faith. Id. at 461 (quoting Kelly v. Kelly, 262 N.J. Super. 303, 307 (Ch. Div. 1992)). The fee award serves to "protect the innocent party from unnecessary costs" by imposing those costs on the party acting in bad faith. Ibid.

As to the extent of fees previously awarded, see R. 5:3-5(c)(5), the court mistakenly stated it had either denied the parties' previous fee applications (citing the November 3, 2017 order), or reserved decision (citing the August 16, 2017 order). The November 2017 order denied plaintiff's application for counsel fees. The court overlooked the January 4, 2019 order that awarded defendant attorney's fees and costs of $3250. It also did not consider defendant's then pending fee application decided by another judge only three weeks later.[4]

_____

[4] Several judges were assigned to this case over the course of the litigation. The January 4 and July 25, 2019 orders that awarded defendant counsel fees were issued by a different judge.

As to the degree to which the fees were incurred to enforce existing orders, see R. 5:3-5(c)(8), the court found that "[a]ll issues presented were brought to resolution by way of consent." Although consent orders were entered on two occasions, that only occurred after plaintiff's conduct led to defendant filing enforcement motions. Without question, the counsel fees incurred by defendant related in large part to enforcing prior orders and obtaining discovery. Moreover, except for plaintiff's agreement to allow defendant to have unsupervised parenting time on Tuesdays, the June 14, 2017 order did not resolve the issues raised in defendant's OTSC application by consent.

The court found that "the parties negotiated and resolved their differences in good faith . . . and that neither party demonstrated any bad faith on the other's part." The record does not support that finding. The record is replete with misstatements by plaintiff. By way of example, plaintiff repeatedly represented that he was tested at work for steroids but that never occurred. Even after finally agreeing to undergo testing for multiple steroids, plaintiff still failed to comply with the order by only testing for testosterone. This hardly qualifies as acting in good faith.

As to the July 2017 motion, the trial court focused solely on the factors set forth in Rule 5:3-5(c). It did not consider two other rules that provide for

14

the award of attorney's fees against parties that violate court orders or fail to make discovery. These rules provide an additional, independent basis for awarding fees.

A party may move to compel discovery, R. 4:23-1(a), and seek sanctions for failure to make discovery, R. 4:23-1(c). If a motion to compel discovery is successful,

> the court shall . . . require the party . . . whose conduct necessitated the motion to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.
>
> [R. 4:23-1(c) (emphasis added).]

Plaintiff refused to provide discovery regarding his alleged steroid usage, which defendant claimed fueled his anger management issues and aggressive behavior towards her. This led to defendant moving to compel discovery.

Our rules also provide for remedies for enforcement of litigant's rights, including the award of attorney's fees. "The court in its discretion may" award counsel fees "to a party accorded relief under this rule." R. 1:10-3. The rule "recognizes that as a matter of fundamental fairness, a party who willfully fails to comply with an order or judgment entitling his adversary to litigant's rights is

properly chargeable with his adversary's enforcement expenses." Pressler & Verniero, Current N.J. Court Rules, cmt. 4.4.5 on R. 1:10-3 (2021).

Plaintiff repeatedly failed to comply with court orders. This caused defendant to move for enforcement of litigant's rights to obtain the previously ordered relief.

Our rules afford relief in the form of counsel fees awards to litigants, such as defendant, who are forced to file motions to compel discovery and enforce previously entered court orders. The rules contemplate holding the delinquent party responsible for their contumacious behavior and awarding counsel fees to the party that brought successful motions to enforce discovery obligations and to protect their rights. By denying defendant's June 2017 motion, the court failed to follow the spirit and mandate of Rules 4:23-1 and 1:10-3.

For these reasons, we vacate the June 4, 2019 order and remand for reconsideration. On remand, the court shall consider plaintiff's conduct that led to the June 2017 motion, his prior conduct, the motion practice that resulted, and the reasonableness of the fees sought, along with the other pertinent factors, based on the motion record. The court shall issue its decision within thirty days.

Finally, we express concern regarding the inordinate delay in deciding the counsel fee applications. Defendant's July 2017 motion remained undecided for

almost two years. The parties' reciprocal fee applications remained undecided for more than a year after the FJOD was entered, contrary to Rule 4:42-9(d), which requires that fee determinations be included in the judgment and prohibits separate orders for allowance of fees.

Fee applications should be decided promptly. See N.J.S.A. 2A:34-23 (stating that "the court shall determine the appropriate award for counsel fees, if any, at the same time that a decision is rendered on the other issue then before the court"). Reserving decision for lengthy periods is disfavored. See In re Alvino, 100 N.J. 92, 101 (1985) (noting that reserved motions are "regularly reviewed at the monthly meetings of the Chief Justice and Assignment Judges"). We understand that trial courts are beset by crowded dockets. Nevertheless, fee applications should be decided without undue delay.

Vacated and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17