**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2941-21

BARBARA POULARD,

     Plaintiff-Respondent,

v.

LUCIEN POULARD, JR.,

     Defendant-Appellant.

_____

Argued February 13, 2024 – Decided April 8, 2024

Before Judges Whipple, Enright and Paganelli.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Atlantic County, Docket No. FM-01-0800-17.

Kelly T. McGriff argued the cause for appellant (Kelly McGriff Law, LLC, attorneys; Kelly T. McGriff, of counsel and on the briefs).

Brian D. Winters argued the cause for respondent (Keith, Winters, Wenning & Harris, LLC, attorneys; Brian D. Winters, on the brief).

PER CURIAM

Defendant Lucien Poulard appeals from certain alimony, equitable distribution, and other provisions of an April 13, 2022 post-judgment matrimonial order. We vacate paragraph eleven of the April 13 order, which directed defendant to pay $24,410 to plaintiff Barbara Poulard for his dissipation of a vehicle acquired during the marriage, and affirm the challenged order in all other respects, substantially for the reasons set forth in the trial court's thoughtful eighty-one-page opinion.

I.

Because we write for the parties, and considering the trial court fully detailed the parties' personal and financial circumstances in its comprehensive written decision, we only summarize the pertinent facts. The parties were married on October 2, 1979, and lived together intermittently until they separated for the last time in 2002. They have two adult children, both of whom are emancipated.

Plaintiff is sixty-seven years old, and defendant is sixty-six years old. Plaintiff suffers from post-traumatic stress disorder, major depressive disorder, generalized anxiety disorder, and dysthymic disorder. She last worked in 1997 and receives Social Security Disability (SSD) benefits totaling $1,381 per

A-2941-21

month. The trial court found she "is not expected to regain employment in the future."

Defendant was declared disabled by the Social Security Administration in or around 1987 and receives SSD benefits of approximately $1,515 per month. The trial court found he also "operates a used car business."

In May 2017, plaintiff filed a pro se complaint for divorce, requesting an award of alimony, equitable distribution, and reimbursement for the following:

(1) $2,800 in parking tickets incurred by defendant in plaintiff's name, plus a $100 fee to reinstate her driver's license;

(2) a 2000 XJ8 Jaguar Sedan that defendant allegedly sold for parts and fraudulently reported stolen to the parties' insurance company;

(3) $17,000 in social security disability payments that plaintiff claimed defendant stole from her;

(4) half of the value of a $279,000 Merrill Lynch account that defendant allegedly liquidated after forging plaintiff's signature;

(5) $169,000 for a house in Elizabeth, which the parties sold;

(6) a gold watch, diamond anniversary necklace, and earrings;

(7) funds from a joint account, which included plaintiff's and the children's disability proceeds; and

(8) $7,000 for a dining room set plaintiff claimed defendant stole.

Additionally, plaintiff asked the trial court to order defendant to satisfy all mortgages he obtained against any marital real estate to fund his automobile

3

business, and that defendant "[c]lear all the [b]ad credit" in her name.

In September 2017, defendant filed a certification, acknowledgment of service, and answer to the complaint. He also requested dismissal of plaintiff's complaint, claiming the parties were divorced in 2007 under a decree he obtained from the Republic of Haiti, and that he remarried twice thereafter.

The judge presiding over the parties' matter denied defendant's request for dismissal. She found the parties were divorced in Haiti, but the divorce decree provided the parties with no other relief except permission for plaintiff to resume her maiden name. Accordingly, in March 2018, the judge entered a case management order directing the parties to exchange discovery and file current case information statements (CIS). In July 2018, the judge entered another order directing the parties to file CISs or risk suppression of their pleadings. Although plaintiff filed a CIS, defendant never did. Therefore, his answer was stricken on the first day of trial.

The ten-day trial began in September 2018 and ended in October 2019. Both parties, as well as their daughter and plaintiff's friend, testified at trial. A significant portion of plaintiff's testimony focused on her purchase of a 2000 XJ8 Jaguar in April 2000. She stated she was able to buy the car with settlement

4 <span>A-2941-21</span>

proceeds she received from a lawsuit against her former employer, Avenel, noting her portion of the net proceeds totaled approximately $57,000.

Plaintiff testified the title to the Jaguar initially was placed in defendant's name, but he intended to transfer it to her name after completing "all the title work." Plaintiff stated she could not drive the car at the time, due to her poor health, but she was its sole owner. She also testified she instructed defendant not to drive the car because it was hers.

According to plaintiff, when she looked out of her window one morning in October 2002, she noticed the 2000 XJ8 Jaguar was no longer in her driveway and had been replaced with another Jaguar. She suspected defendant removed her car because he did not want her driving it. Later that night, defendant came home to tell her that her "car got stolen in New York." Thereafter, the New York Sanitation Department called plaintiff to tell her that because the Jaguar was stripped and found in a derelict condition, the Sanitation Department took possession of the damaged vehicle and "crushed it."

Plaintiff testified she thought defendant "took [her] car to New York and had it stripped." Additionally, she produced a police report from October 19, 2002, showing that on the day her Jaguar disappeared from the driveway, defendant told the Union City police he drove the vehicle to a local store, parked

5

it in the lot, and after shopping for approximately forty-five minutes, he returned to the lot to find the car gone. At a subsequent hearing, plaintiff also produced a letter to verify the parties filed an insurance claim for the loss of the Jaguar, but the carrier denied the claim based on the parties' failure to submit certain documentation.

When the trial continued in February 2019, the judge entered an order extending the time for the parties to exchange additional discovery. The judge also directed plaintiff to provide defendant with a copy of "her current exhibits" within two weeks. On May 7, 2019, the judge entered another order directing plaintiff to provide the court and defendant with proof she provided defendant with certain discovery and ordered defendant to submit a certification a week later to confirm whether he received plaintiff's discovery.

Three weeks later, the judge conducted a case management conference. Plaintiff appeared; defendant did not. Accordingly, the judge entered an order finding defendant's "outstanding discovery issue [wa]s deemed moot" because he failed to communicate with the court and "provide any indication that [his] . . . discovery matter [wa]s still at issue[,] . . . per the order of May 7, 2019." The judge heard an additional five days of testimony before the trial ended on October 1, 2019.

6

On April 13, 2022, the court entered a final order: (1) finding plaintiff's request for a judgment of divorce was moot, based on the 2007 Haitian divorce decree; (2) ordering defendant to pay plaintiff open durational alimony of $260 per week, retroactive to the date of plaintiff's complaint, plus $100 per week toward arrears, based on defendant's ability to earn approximately $32,900 per year from selling cars; (3) awarding plaintiff $24,410 as reimbursement for the loss of the 2000 XJ8 Jaguar sedan; and (4) directing defendant to reimburse plaintiff the sum of $2,097.05 for motor vehicle tickets he incurred in her name. The judge denied plaintiff's remaining requests for relief as either unsupported or barred under "the equitable principle of laches."

In finding plaintiff was entitled to an award of $24,410 for the 2000 XJ8 Jaguar, the judge explained:

> [d]efendant told Union City police he was driving the Jaguar on October 19, 2002, [and] it was stolen from a parking lot in Union . . . when he went into a store for approximately [forty-five] minutes. The car was discovered stripped in Queens the same day, removed by the Sanitation Derelict Vehicle Operations on October 21, 2022, and crushed or dismantled . . . .
>
> Defendant . . . did not testify about the 2000 [XJ8] Jaguar, provide any evidence of his own [about it], or refute [p]laintiff's claims concerning her belief that he "had it stolen." . . . It appears, from the face of [p]laintiff's evidence, that her Jaguar was reported stolen by [d]efendant to the police department in Union

City, New Jersey, at [7:38 p.m.], over [six] hours after the vehicle was reported as tagged for removal in Queens, at [1:18 p.m.]. It appears that [d]efendant's report to police that he had been in a store for about [forty-five] minutes and came out to find the vehicle gone was patently false. Plaintiff also offered uncontroverted testimony that [d]efendant . . . told her the vehicle was stolen in "New York," when he had reported it stolen from Union City.

After finding the purchase price of the Jaguar was $24,410, the judge stated:

[t]he court accepts that this [amount] was paid with the proceeds of [p]laintiff's personal injury lawsuit[,] . . . which the court deems exempt from equitable distribution in this matter, notwithstanding the title to the car at some point [was] in the joint names of the parties. Defendant shall pay the sum of $24,410 to [p]laintiff within 180 days.

## II.

On appeal, defendant argues the trial court erred by: (1) finding plaintiff's alimony claim "was not barred by the doctrine of laches"; (2) imputing income to defendant; and (3) denying his motion to dismiss the complaint after plaintiff repeatedly "fail[ed] to comply with discovery deadlines." Additionally, defendant contends for the first time on appeal that the trial court erred in: (1) concluding plaintiff's alimony claim "was not barred by the doctrine of equitable estoppel"; (2) "requiring [him] to reimburse plaintiff for the Jaguar" and certain motor vehicle tickets without the court examining the appropriate equitable

8

distribution factors; (3) determining that he dissipated the Jaguar without the court having applied the factors set forth in Kothari[1]; and (4) converting plaintiff's complaint into a Rule 4:50 motion and granting her relief without compelling plaintiff to satisfy the Rule's requirements.

Other than defendant's contentions about the Jaguar, none of his arguments have sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We also need not address the arguments defendant failed to raise to the trial court because they are not "jurisdictional in nature," nor do they "substantially implicate public interest." State v. Walker, 385 N.J. Super. 388,

---

[1] Kothari v. Kothari, 255 N.J. Super. 500, 507 (App. Div. 1992). In Kothari, the court held that "[w]here property has been dissipated during the marriage[,] the asset subject to distribution may take the form of a cash indebtedness to be imposed by the court upon one spouse in favor of the other." Id. at 510. The court also identified the following "most commonly" applied factors in determining whether one spouse dissipated a marital asset at the expense of the other spouse:

> (1) the proximity of the expenditure to the parties' separation, (2) whether the expenditure was typical of expenditures made by the parties prior to the breakdown of the marriage, (3) whether the expenditure benefitted the "joint" marital enterprise or was for the benefit of one spouse to the exclusion of the other, and (4) the need for, and amount of, the expenditure.
>
> [Id. at 507.]

410 (App. Div. 2006) (citing Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)). Thus, we limit our discussion to whether the judge mistakenly awarded plaintiff $24,410 for her claims related to the Jaguar.

We begin with the standards that govern our analysis. Our scope of review of Family Part orders is limited. Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). We owe substantial deference to the Family Part's findings of fact because of its special expertise in family matters. Id. at 413. Deference is especially appropriate in bench trials when the evidence is "largely testimonial and involves questions of credibility." Id. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). A trial judge who observes witnesses and listens to their testimony is in the best position "to make first-hand credibility judgments about the witnesses who appear on the stand." N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008).

Therefore, we will not disturb a trial court's factual findings unless "they are so manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice." Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). However, we do not accord such deference to legal

A-2941-21

conclusions and review such conclusions de novo. Thieme v. Aucoin-Thieme, 227 N.J. 269, 283 (2016).

"Accurate, complete and current information is essential at every stage of a litigated matrimonial matter," and "[t]he quality of every judicial decision depends heavily on the information presented to the court." Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 5:5-2 (2024). Therefore, pursuant to Rule 5:5-2(a), a CIS "shall be filed and served in all contested family actions . . . in which there is any issue as to . . . support, alimony[,] or equitable distribution."

A reviewing court will not disturb a trial court's decision on distribution of property "as long as the trial court could reasonably have reached its result from the evidence presented, and the award is not distorted by legal or factual mistake." La Sala v. La Sala, 335 N.J. Super. 1, 6 (App. Div. 2000).

Pursuant to N.J.S.A. 2A:34-23.1:

> In making an equitable distribution of property, the court shall consider, but not be limited to, the following factors:
>
> a. The duration of the marriage or civil union;
>
> b. The age and physical and emotional health of the parties;
>
> c. The income or property brought to the marriage or civil union by each party;

11

d. The standard of living established during the marriage or civil union;

e. Any written agreement made by the parties before or during the marriage or civil union concerning an arrangement of property distribution;

f. The economic circumstances of each party at the time the division of property becomes effective;

g. The income and earning capacity of each party, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children, and the time and expense necessary to acquire sufficient education or training to enable the party to become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage or civil union;

h. The contribution by each party to the education, training[,] or earning power of the other;

i. The contribution of each party to the acquisition, dissipation, preservation, depreciation[,] or appreciation in the amount or value of the marital property, or the property acquired during the civil union as well as the contribution of a party as a homemaker;

12

j. The tax consequences of the proposed distribution to each party;

k. The present value of the property;

l. The need of a parent who has physical custody of a child to own or occupy the marital residence or residence shared by the partners in a civil union couple and to use or own the household effects;

m. The debts and liabilities of the parties;

n. The need for creation, now or in the future, of a trust fund to secure reasonably foreseeable medical or educational costs for a spouse, partner in a civil union couple[,] or children;

o. The extent to which a party deferred achieving their career goals; and

p. Any other factors which the court may deem relevant.

[N.J.S.A. 2A:34-23.1.]

Before fixing an equitable distribution award, the trial court must first decide which property qualifies as marital property and which property, if any, belongs separately to either spouse. N.J.S.A. 2A:34-23.1 ("[T]he court shall make specific findings of fact on the evidence relevant to all issues pertaining to asset eligibility or ineligibility, asset valuation, and equitable distribution, including specifically, but not limited to, the factors set forth in this section.").

As the Court in <u>Rothman v. Rothman</u>, 65 N.J. 219, 232 (1974) explained, when fixing an equitable distribution award,

> a trial judge enters upon a three-step proceeding. Assuming that some allocation is to be made, [the judge] must first decide what specific property of each spouse is eligible for distribution. Secondly, [the judge] must determine its value for purposes of such distribution. Thirdly, [the judge] must decide how such allocation can most equitably be made.

A Family Part judge will presume that property acquired during the marriage is marital property subject to equitable distribution. N.J.S.A. 2A:34-23.1 ("It shall be a rebuttable presumption that each party made a substantial financial or nonfinancial contribution to the acquisition of income and property while the party was married."). Importantly, however, when a court determines how to divide marital assets, there is no presumption the assets should be distributed equally. <u>Rothman</u>, 65 N.J. at 232 n.6; <u>see also</u> <u>Wadlow v. Wadlow</u>, 200 N.J. Super. 372, 377 (App. Div. 1985).

"[T]he burden of proof to establish the immunity of an asset from [equitable] distribution rests upon the spouse asserting the immunity." <u>Dotsko v. Dotsko</u>, 244 N.J. Super. 668, 676 (App. Div. 1990) (citing <u>Painter v. Painter</u>, 65 N.J. 196, 214 (1974)). Nonetheless, the Court has made clear that a party's personal injury recovery for pain and suffering is not equitably distributable.

A-2941-21

Landwehr v. Landwehr, 111 N.J. 491, 501 (1988).  Instead, only that portion of a personal injury settlement attributable to lost wages and "assets . . . expended for medical expenses" is subject to equitable distribution.  Id. at 502.

Finally, it is axiomatic "that a party 'in equity must come into court with clean hands and . . . must keep them clean . . .  throughout the proceedings.'" Clark v. Clark, 429 N.J. Super. 61, 77 (App. Div. 2012) (omissions in original) (quoting Chrisomalis v. Chrisomalis, 260 N.J. Super. 50, 53-54 (App. Div. 1992)).

Governed by these principles, we affirm all but paragraph eleven of the April 13, 2022 order, granting plaintiff a $24,410 award for the Jaguar.  We are constrained to vacate this award and remand for further proceedings to allow the trial court to reconsider this distribution as it relates to the statutory factors under N.J.S.A. 2A:34-23.1.

In reaching this conclusion, we discern no reason to disturb the judge's finding that plaintiff credibly testified she bought the Jaguar using settlement funds she received from a personal injury suit.  But the basis for the judge finding the settlement funds were "exempt from equitable distribution" is unclear.  Moreover, the parties' testimony sheds little light on this issue. Similarly, it is not clear from the record why the judge found defendant

A-2941-21

"dissipated" the Jaguar, as her opinion does not explicitly state defendant was responsible for the Jaguar's destruction.

Therefore, on remand, we direct the judge to reconsider the nature of plaintiff's settlement funds and more fully address the statutory factors set forth under N.J.S.A. 2A:34-23.1—including the dissipation factor set forth under N.J.S.A. 2A:34-23.1(i)—to determine whether plaintiff is entitled to reimbursement for the full purchase price of the Jaguar. We understand the judge's analysis of the statutory factors may be hampered due to the parties' limited testimony and proofs regarding the Jaguar, not to mention defendant's blatant violation of the judge's orders and Rule 5:5-2, compelling him to file a current CIS. Thus, although we do not direct the judge to elicit further testimony from the parties on the remaining issues, she may do so if she feels it is appropriate.

Affirmed in part and vacated and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION